**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jpafiti@pomlaw.com
avan@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs & the Proposed Class*

— additional counsel on signature page —

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN, <br><br> Defendants. | Case No.: 3:21-CV-00687-AJB-MSB <br><br> **CLASS ACTION** <br><br><br> Hearing Date: Thurs. October 13, 2022 <br> Time: 2:00 PM <br> Judge: Honorable Anthony J.  Battaglia <br> Courtroom 4A (4th Floor – Schwartz) |

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

PLEASE TAKE NOTICE that on Thursday, October 13, 2022, at 2:00 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Anthony J. Battaglia, United States District Judge for the Southern District of California, located at 221 West Broadway, San Diego, California 92101, Courtroom 4A, Lead Plaintiff Gergely Csaba ("Lead Plaintiff") will, and do, move this Court, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(g), for an Order:

1.      Certifying the claims against Franklin Wireless Corp., OC Kim, and David Brown (collectively, "Defendants") to be litigated as a class action on behalf of the following class (the "Class"):

> All persons and entities other than defendants who purchased or otherwise acquired Franklin Wireless Corporation ("Franklin" or the "Company") common stock between September 17, 2020 and April 8, 2021 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

2.      Appointing Gergely Csaba as class representative;

3.      Appointing Pomerantz LLP as Counsel for the Class; and

4.      Granting such other and further relief the Court may deem just and proper.

Class certification and the appointment of Lead Plaintiff as Class Representative are proper, where, as here, the Class is so numerous that joinder of all members is impracticable, common question of law and fact exist, Lead Plaintiff's claims are typical of the Class claims, Lead Plaintiff and his counsel will fairly and adequately represent the class, common questions predominate, and a class action is superior to individual actions. Additionally, the appointment of Class Counsel is proper, where, as here, counsel is well qualified to represent the Class.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No.  3:21-CV-00687-AJB-MSB

Dated:  July 22, 2022

Respectfully submitted,

**POMERANTZ  LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman (*pro hac vice*)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiff*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
Facsimile: (212) 697-7296
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiff*

2

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No.  3:21-CV-00687-AJB-MSB

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL SUMMARY ..........................................................................2

III.    PROCEDURAL HISTORY .....................................................................3

IV.     ARGUMENT............................................................................................4

        A.    Class Certification Standards .................................................4

        B.    The Rule 23(a) Requirements Are Satisfied ..........................5

              1.    The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable..............................................5

              2.    There Are Questions of Law and Fact Common to the Class ...6

              3.    Lead Plaintiff's Claims Are Typical of the Class.....................8

              4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class...................................................................9

        C.    The Proposed Class Satisfies Rule 23(b)(3).........................10

              1.    Common Questions of Law and Fact Predominate .................11

              2.    Lead Plaintiff and the Class Are Entitled to a Presumption of Reliance Because Franklin Common Stock Shares Traded in an Efficient Market ............................................................13

                    i.     Franklin Common Stock Shares Were Listed and Traded on the NASDAQ, a Presumptively Efficient Market.....................................................15

                    ii.    *Cammer* 1: Weekly Trading Volume ..........................16

                    iii.   *Cammer* 2: Analyst Coverage.......................................16

                    iv.    *Cammer* 3: Market Makers...........................................16

                    v.     *Cammer* 4: Eligibility to File SEC Form S-3 ...............17

                    vi.    Cammer 5: The Relationship Between News Events and Security Price Changes ....................................17

i

vii.   Additional Factors Further Establish Market Efficiency19

  *1)* Additional Factor 1:  Market Capitalization .......19

  *2)* Additional Factor 2:  Bid-Ask Spread.................20

  *3)* Additional Factor 3: Public Float.......................20

  *4)* Additional Factor 4: Institutional Ownership .....21

  *5)* Additional Factor 5:  Autocorrelation.................21

3. The Proposed Damages Model Establishes a Method for Proving Damages on a Class Wide Basis ...............................22

4. A Class Action Is the Superior Method for This Controversy 23

V. CONCLUSION.......................................................................................23

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No.  3:21-CV-00687-AJB-MSB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc., v. Windsor*,
  521 U.S. 591 (1997)..................................................................4, 10, 11

*Baker v. SeaWorld Ent., Inc.*,
  2017 WL 5885542 (S.D. Cal. Nov. 29, 2017)............................................8, 9, 12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................12, 13, 14

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ........................................................14

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ........................................................8

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ........................................................23

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989)..................................................*passim*

*Connecticut Retirement Plans & Trust Funds v. Amgen*,
  2009 WL 2633743 (C.D. Cal. Aug. 12, 2009) ........................................5, 9, 12

*Edwards v. First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ........................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)..................................................................11, 12, 23

*Gen. Tel. Co. of Southwest v. Falcon*,
  102 S. Ct. 2364 (1982)..................................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)..................................................................*passim*

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................................................10

*Harris v. Palm Springs Alpine Estates, Inc.*,
 339 F.2d 909 (9th Cir.1964) ...........................................................................6

*Hatamian v. Advanced Micro Devices, Inc.*,
 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .........................................8, 12, 23

*In re AST Rsch. Sec. Litig.*,
 1994 WL 722888 (C.D. Cal. Nov. 8, 1994) ......................................................4

*In re Banc of California Sec. Litig.*,
 326 F.R.D. 640 (C.D. Cal. 2018)................................................................8, 12

*In re BofI Holding, Inc. Sec. Litig.*,
 2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) (*BofI II*)..............................*passim*

*In re CIGNA Corp. Sec. Litig.*,
 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ...................................................10

*In re Cooper Companies Inc. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009)..............................................................2, 4, 6

*In re Diamond Foods, Inc., Sec. Litig.*,
 295 F.R.D. 240 (N.D. Cal. 2013)................................................................*passim*

*In re LDK Solar Sec. Litig.*,
 255 F.R.D. 519 (N.D. Cal. 2009)......................................................................7

*In re Lendingclub Sec. Litig.*,
 282 F.Supp. 3d 1171 (N.D. Cal. 2017).......................................................7, 23

*In re Montage Technlogy Grp. Ltd. Sec. Litig.*,
 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016).........................................5, 14, 24

*In re Petrobras Sec. Litig.*,
 312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017)............................................19

*In re Petrobras Securities Litigation*,
 No. 14 Civ. 9662 (S.D.N.Y. 2018) .................................................................10

iv

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 1991529 (N.D. Cal. June 30, 2007)......................................................................5

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D...........................................................................................................................23

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D. 209 (C.D. Cal. 2019)......................................................................................6

*In re THQ Inc. Sec. Litig.*,
  2002 WL 1832145 (C.D. Cal. Mar. 22, 2002)...................................................................5

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018).................................................................................6, 23

*In re UTStarcom, Inc. Sec. Litig*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010)....................................................................7

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)............................................................5, 6, 11

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) ........................................................................................21

*Loritz v. Exide Techs.*,
  2015 WL 6790247 (C.D. Cal. July 21, 2015).................................................................21

*Luna v. Marvell Tech. Grp., Ltd.*,
  2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ..................................................................7

*Marsh v. First Bank of Del.*,
  2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ......................................................................5

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015).........................................................................16, 20, 22

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...........................................................................................23

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020)................................................................................13, 23

v

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

*Sec. & Exch. Comm'n v. Jensen*,
    2013 WL 12129377 (C.D. Cal. Mar. 13, 2013)...............................................18

*Todd v. STAAR Surgical Co.*,
    2017 WL 821662 (C.D. Cal. Jan. 5, 2017).....................................................4, 17

*Vaquero v. Ashley Furniture Indus.*,
    824 F.3d 1150 (9th Cir. 2016) .......................................................................22

*Vinh Nguyen v. Radient Pharms. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012)....................................................6, 16, 17, 23

**Statutes**

Exchange Act Section 10(b) ....................................................................8, 9, 11, 12

Exchange Act Section 20(a)...........................................................................8, 9, 12

Securities Exchange Act of 1934 Sections 10(b) and 20(a) ................................2, 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................................*passim*

17 C.F.R. § 240.10b-5 ................................................................2, 3, 11, 13

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Lead Plaintiff Gergely Csaba ("Plaintiff" or "Lead Plaintiff") respectfully submits this memorandum in support of his motion for class certification pursuant to Federal Rule of Civil Procedure 23.[1]  Plaintiff seeks certification of the following class (the "Class"):

> All persons and entities that purchased or otherwise acquired the common stock of Franklin Wireless Corporation ("Franklin" or the "Company"), between September 17, 2020 and April 8, 2021, inclusive (the "Class Period"), excluding Defendants, current and former officers and directors of Franklin, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.[2]

Lead Plaintiff also seeks the appointment of Lead Counsel, Pomerantz LLP, as Class Counsel.

## I.   INTRODUCTION

This lawsuit is a textbook example of a case warranting class action treatment. Plaintiffs seek to prove that, like other Class members, they were injured by a common course of misconduct—the issuance of false and misleading statements and material omissions by Defendants concerning Franklin's wrongdoing.  The questions of law and fact relevant to the merits—issuance of false and misleading statements, reliance, materiality, scienter, loss causation and economic loss—are identical for each and every member of the putative Class.  As detailed below, this action satisfies all the requirements for class certification under Rule 23(a):  numerosity; commonality; typicality; and adequacy of representation.  This action also satisfies the two core requirements for certification under Rule 23(b)(3):  predominance of common questions of law or fact and superiority of a class action over other available methods for adjudication.  The common liability and damages questions overwhelmingly predominate over any individual questions.  Defendants have expressly admitted, and Dr. Sorin M. Sorescu, Lead Plaintiff's expert, has confirmed in his accompanying report (the "Sorescu Report"), that Franklin common stock traded in an efficient market during the Class Period.  *See*

---

[1] All "¶_" references are to the Amended Complaint.

[2] Plaintiff seeks certification of the Class for the Class Period as defined in the Amended Complaint ("AC").

1

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Declaration of Austin P. Van ("Van Decl."), Ex. 1.

Finally, the class action mechanism is the superior method for fairly and efficiently adjudicating both Lead Plaintiff and all Class members' claims. In short, this securities case fits Rule 23's certification requirements "like a glove." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)). As such, Lead Plaintiff's respectfully submit that this motion should be granted in all respects.

## II.    FACTUAL SUMMARY

This putative securities fraud class action alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder by misleading the market to believe that the Company had no knowledge that its core product of mobile hotspot devices ("Ellipsis Jetpacks" or "Jetpacks" or "Hotspots") were manufactured with defective lithium-ion batteries. AC ¶ 3. The AC alleges that during the Class Period, Franklin knew, but did not disclose that the Jetpacks were manufactured with defective lithium-ion batteries that posed a serious safety hazard because the batteries could overheat and cause severe burns and, in some cases, could catch fire. *Id*. ¶¶ 4, 27-30, 39-63.

The truth began to be revealed on April 1, 2021, when Franklin disclosed that it "ha[d] been notified of reports of battery issues in some of its wireless hotspot devices," and stated that "[t]he [C]ompany is working with its battery and device manufacturing partners and carrier customer to determine the cause and extent of the problem. " *Id*. ¶ 6. On this news, the price of Franklin's shares fell by $0.35 per share, or 65%, to close at $20.77 per share on April 5, 2021, the next trading session. *Id*.

Then, on April 8, 2021, CNBC reported that Franklin's customer, Verizon, was "recalling 2.5 million" "Ellipsis Jetpack mobile hotspots imported by Franklin Wireless Corp. and sold between April 2017 and March 2021" and that "[t]he affected models are labeled: MHS900L, MHS900LS and MHS900LPP," "after discovering that the lithium

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

ion battery can overheat, creating a fire and burning hazard," and that "just over 1 million of the recalled devices are currently in use, meaning currently or recently used by customers." *Id*. According to CNBC, "Verizon had received 15 reports of the hotspots overheating. *Id*. Six of those reports included incidents of fire damage to bedding or flooring and two involved minor burn injuries," and that "[s]ome of the hotspots were supplied to students by their schools to continue remote learning." *Id*.

Also on April 8, 2021, the United Stated Consumer Product Safety Commission ("USCPSC") issued Recall Number 21-106 and published a notice of Verizon's recall of Franklin's "Ellipsis Jetpack mobile hotspots," identifying that "[t]he lithium ion battery in the hotspots can overheat, posing fire and burn hazards." *Id*. According to the USCPSC, "Verizon has received 15 reports of the hotspots overheating, including six reports of fire damage to bedding or flooring and two reports of minor burn injuries." *Id*. Additionally, the USCPSC advised "[p]arents whose children received the recalled Ellipsis Jetpack from their schools" to "contact their school for instructions on how to receive a free replacement device and return their recalled Ellipsis Jetpacks." *Id*. On this news, the price of Franklin's shares fell by $2.82 per share, or 14%, to close at $17.33 per share on April 8, 2021. *Id*.

On April 9, 2021, Franklin stated that its customer, Verizon, "has issued a voluntary recall of its Jetpack Hotspot devices imported by Franklin," adding that "Franklin is continuing to work with its batter and device manufacturing partners to determine the cause and extent of the concerns." *Id*. On this news, the price of Franklin's shares fell by $4.07 per share, or nearly 23%, to close at $13.26 per share on April 9, 2021. *Id*.

## III.    PROCEDURAL HISTORY

On April 16, 2021, Mohammed Usman Ali filed a Class Action Complaint against Defendants, asserting violations of Sections 10(b) and 20(a) of the Exchange Act. ECF No. 1. On September 15, 2021, the Court appointed Gergely Csaba as Lead Plaintiff. ECF No. 14. On November 15, 2021, Lead Plaintiff subsequently filed the Amended

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Complaint ("AC"). ECF No. 26. On January 14, 2022, Defendants filed an Answer to the Amended Complaint. ECF No. 270. Plaintiff now seeks certification of the Class.

## IV. ARGUMENT

### A. Class Certification Standards

To certify a putative class, the Court must determine whether four threshold requirements of Fed. R. Civ. P. 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 617 (1997). In addition, the Court must determine whether the action is maintainable under Fed. R. Civ. P. 23 (b)(1), (2) or (3). *Id*. Class actions promote judicial economy by aggregating small claims into one lawsuit. "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co.*, 105 S. Ct. at 2973.

"The Ninth Circuit has recognized explicitly that 'class actions . . . have 'proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants . . . .'" *In re AST Rsch. Sec. Litig.*, 1994 WL 722888, at *2 (C.D. Cal. Nov. 8, 1994) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 339 F.2d 909, 913 (9th Cir.1964)). "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *Cooper*, 254 F.R.D. at 632 (quoting *Epstein*, 50 F.3d at 668). "Especially in the case of a class action alleging securities fraud, then, '[a]ny doubts a court has about class certification should be resolved in favor of certification.'" *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017). Accordingly, courts throughout the Ninth Circuit regularly grant class certification in securities cases like this one. *See*, *e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *10 (S.D. Cal. Aug. 24, 2021) (*BofI II*).

When determining whether to certify a class, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *In re Diamond Foods, Inc., Sec. Litig.*,

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

295 F.R.D. 240, 245 (N.D. Cal. 2013).  Although "the trial court must conduct a 'rigorous analysis'" to determine whether those requirements have been met, the "substantive allegations of the complaint must be accepted as true" and "[n]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class." *Marsh v. First Bank of Del.*, 2014 WL 554553, at *4 (N.D. Cal. Feb. 7, 2014).

Recognizing the value of class actions in the securities law context, courts in the Ninth Circuit "liberally construe" the requirements of Rule 23 in favor of certification. *See In re THQ Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("The Ninth Circuit has noted that class actions have proved useful 'where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants.'") (quoting *Harris*, 329 F.2d at 913); *see also In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

"A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *2 (N.D. Cal. June 30, 2007). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. 455 at 466; *In re Montage Technlogy Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *2 (N.D. Cal. Apr. 21, 2016).

## B.    The Rule 23(a) Requirements Are Satisfied

### 1.    The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members

5

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

would be "impracticable." Fed. R. Civ. P. 23(a)(1).   Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris*, 329 F.2d at 913-14.  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Cooper*, 254 F.R.D. at 633.  In securities cases, numerosity is presumed when millions of shares are traded during the proposed class period.  *Id.*  "[P]roposed class of at least forty members presumptively satisfies the numerosity requirement." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012).  "[C]ourts are quite willing to accept common sense assumptions in order to support a finding of numerosity, often looking at the number of shares traded or transactions completed rather than seeking to determine directly the number of potential class members involved." *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4.

During the Class Period, the common stock of Franklin was listed on the NASDAQ and traded under the ticker symbol "FKWL." *See* Van Decl. Ex. 1; Expert Report of Sorin M. Sorescu ¶ 15; Defendants' Answer to Amended Complaint ¶ 14.  Also, during the Class Period, a total of 2,172,392 million shares of Franklin Wireless Common Stock was traded by investors.  *Id.* ¶ 24.  Although Plaintiffs have not yet ascertained the precise number of potential Class members, they believe that there are thousands of geographically dispersed members of the proposed Class.  The identity of the members can be readily determined from securities brokerage and nominee firms' books and records.  Because Franklin "has millions of shares trading on a national exchange" the Court "'may infer that' the numerosity requirement is met." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018); *see also In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019) ("Courts generally find that 'the numerosity requirement is met in securities fraud suits involving nationally traded stocks.'"); William B. Rubenstein, 1 Newberg on Class Actions § 3:12 (5th ed.) (last updated Dec. 2020) ("[I]n class actions involving nationally traded securities, courts generally presume that the numerosity requirement is met.").

### 2.    There Are Questions of Law and Fact Common to the Class

The "commonality" requirement under Rule 23(a) is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively." *In re UTStarcom, Inc. Sec. Litig*, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). Both "[t]he existence of shared legal issues with divergent factual predicates" and "a common core of salient facts coupled with disparate legal remedies" suffice. *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *2 (N.D. Cal. Oct. 27, 2017) (quoting *Hanlon*, 150 F.3d at 1019). A single common question is enough. *In re Lendingclub Sec. Litig.*, 282 F.Supp. 3d 1171, 1179 (N.D. Cal. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014)) (plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement.").

There are many common factual and legal questions in this case. All Class members are "unified by an interest in proving the same common course of conduct regarding [Defendants'] allegedly fraudulent . . . representations." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009). Common proof will be used to answer many questions of law and fact, including, *inter alia*:

(i) Whether federal securities laws were violated by Defendants' conduct as alleged;

(ii) Whether Defendants made any untrue statements of material fact or omitted to state any material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading;

(iii) Whether Franklin and the Individual Defendants acted with the requisite level of scienter under Section 10(b) of the Exchange Act;

(iv) Whether the Individual Defendants were controlling persons of the Company under Section 20(a) of the Exchange Act;

(v) Whether and to what extent the prices of Franklin common stock shares were artificially inflated during the Class Period due to the alleged false and misleading statements or omissions;

7

(vi)    Whether reliance is presumed under the fraud-on-the-market doctrine; and;

(vii)   Whether Lead Plaintiff and other members of the Class suffered damages, as well as the appropriate measure thereof.

Loss causation is also appropriate for class wide resolution. *In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018).   Taken together, these common issues are more than sufficient to satisfy the commonality requirement. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit."); *Banc of Cal.*, 326 F.R.D. at 646 (commonality requirement was satisfied in a securities fraud action); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016) ("The Ninth Circuit recognizes that public disclosures alleged to contain material misrepresentations and omissions . . . present common questions of law and fact."); *see also Baker v. SeaWorld Ent., Inc.*, 2017 WL 5885542, at *6 (S.D. Cal. Nov. 29, 2017) (same).

### 3.    Lead Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3) mandates that the claims of the representative plaintiff be typical of the claims of the class.   The Supreme Court has acknowledged that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 102 S. Ct. 2364, 2373 n.13 (1982).   Rule 23(a)'s "typicality" requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Connecticut Retirement Plans & Trust Funds v. Amgen*, 2009

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

WL 2633743, at *5 (C.D. Cal. Aug. 12, 2009) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Baker v. SeaWorld Ent., Inc.*, 2017 WL 5885542, at *6 (S.D. Cal. Nov. 29, 2017) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

Typicality is unequivocally established here. Lead Plaintiff and Class members all purchased Franklin common stock shares and assert the same Section 10(b) claims, based on the same misstatements/omissions by Defendants, and the same Section 20(a) claim of "control person" liability. Lead Plaintiff's claims will be proven using the same evidence and legal theories that apply to the Class as a whole. Additionally, the nature of damages is also typical: when the truth about Franklin was revealed through the Company's disclosures, the CNBC report, and the USCPSC recall and notice of recall, the price of Franklin common stock declined. For these reasons, typicality is established. *See, e.g.*, *BofI II*, 2021 WL 3742924, at *3 (finding typicality where the plaintiff's claim was "essentially the same as that of the proposed class members.").

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s requirement that "the representative parties will fairly and adequately protect the interests of the class" is met. Fed. R. Civ. P. 23(a)(4). Courts have established a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Both prongs are met here. Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 594, and no actual or potential conflicts exist. Plaintiff and all Class members have suffered losses from purchasing

9

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Franklin securities at artificially inflated prices. They have been injured by the identical wrongful underlying misrepresentations and omissions of Defendants. Plaintiff has been actively involved in this litigation and is willing to serve as a representative party on behalf of the Class and understands his duties as a Class representative. Plaintiff is willing and able to prosecute this action on behalf of the Class to a successful conclusion. The relationship between Plaintiff and Lead Counsel is solely attorney-client, and neither Plaintiff nor Lead Counsel have any connection with Defendants or other conflicts that would render them inadequate to represent the Class. It is in Plaintiff's interest to vigorously prosecute this action on behalf of the Class. *See* Csaba Decl., ¶ 7. Accordingly, Plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see, e.g.*, *BofI II*, 2021 WL 3742924, at *3–4 (stating that the plaintiff and the lead counsel satisfied the adequacy requirements because they actively participated in the litigation of the case and there was no indication that their interests were in conflict with other Class members).

Lead Counsel is also well-qualified to represent the Class. Pomerantz is highly experienced in litigating securities class actions; has and will vigorously prosecute the claims of the proposed Class; and is "qualified, experienced, and generally able to conduct the [proposed] litigation." *In re CIGNA Corp. Sec. Litig.*, 2006 WL 2433779, at *4 (E.D. Pa. Aug. 18, 2006) (class counsel "are well-qualified, experienced, and able to conduct the mechanics of this litigation on behalf of the proposed class"). Pomerantz achieved a historic $3 billion settlement for defrauded investors in 2018 as well as precedent-setting legal rulings in *In re Petrobras Securities Litigation*, No. 14 Civ. 9662 (S.D.N.Y. 2018). Lead Counsel has a proven track record in prosecuting complex securities class actions like this one, establishing their adequacy for appointment as Class Counsel. *See* Van Decl. Ex. 2 (Pomerantz resume).

### C.     The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that issues common to the class predominate over individualized issues and that a class action be superior to other methods of adjudication.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. "Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9. The proposed Class meets these requirements.

### 1.   Common Questions of Law and Fact Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem*, 521 U.S. at 625. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"). "Common issues predominate over individual issues when the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

To establish liability under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must show "(1) a material misrepresentation or omission of fact by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[3] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) ("*Halliburton II*").

The majority of the elements at issue in this case—falsity, materiality, scienter, and loss causation—present questions "necessarily common to the class" because "they

---

[3] Lead Plaintiff also asserts claims against the Individual Defendants for violations of Section 20(a) of the Exchange Act. *See* AC ¶¶ 101–05. Because these claims do not raise distinct issues of predominance, they are not addressed separately. *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *5, n.2 (N.D. Cal. Mar. 16, 2016).

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

depend on defendants' actions, not those of any class member." *In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 648 (C.D. Cal. 2018);[4] *see also BofI II*, 2021 WL 3742924, at *4 (stating that "the materiality of the misrepresentation and the defendant's scienter are issues that would require the same proof for any class member"). Given that, this motion addresses the limited question whether the elements of reliance and damages can be resolved on a classwide basis. *See Halliburton I*, 563 U.S. at 810 (addressing reliance); *Baker*, 2017 WL 5885542, at *9–15 (addressing reliance and damages). Thus, whether common questions predominate for Lead Plaintiff's Section 10(b) claim "turns on the element of reliance." *Halliburton I*, 563 U.S. at 810.

Lead Plaintiff will demonstrate Class-wide reliance under the "fraud-on-the-market" presumption of reliance, which dispenses with the requirement that each Class member must prove individual reliance upon Defendants' alleged misstatements and/or omissions. This presumption is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business," and thus, "[m]isleading statements will . . . defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988).

Under *Basic* and *Halliburton II*, plaintiffs may "satisfy the reliance element of the Rule 10b-5 cause of action by invoking a presumption that a public, material misrepresentation will distort the price of a stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283–84. As explained below, Franklin common stock shares traded in an efficient market, such that the presumption applies.

---

[4] Moreover, a plaintiff need not prove materiality or loss causation at the class certification stage. *See Amgen*, 568 U.S. at 459 (materiality); *Halliburton I*, 563 U.S. at 815 (loss causation).

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

**2.    Lead Plaintiff and the Class Are Entitled to a Presumption of Reliance Because Franklin Common Stock Shares Traded in an Efficient Market**

To invoke the fraud-on-the-market presumption, Lead Plaintiff needs only to show that Defendants' false statements were publicly made and that Franklin common stock shares traded in an efficient market during the Class Period. *Halliburton II*, 573 U.S. at 277–78. To invoke the fraud-on-the-market presumption of reliance, a plaintiff must establish that "(1) the alleged misrepresentations were publicly known, (2) the stock traded in an efficient market, and (3) the relevant transaction took place 'between the time the misrepresentations were made and the time the truth was revealed.'" *Diamond Foods*, 295 F.R.D. at 247 (quoting *Halliburton I*, 563 U.S. at 811). Where the presumption applies, "a plaintiff need not prove that it read or heard the misrepresentation that underlies its securities claim"—that is, a plaintiff need not prove individual reliance. *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 283 (N.D. Cal. 2020). Reliance on the market price is sufficient. *Basic*, 485 U.S. at 241–42.

Importantly, the Supreme Court has confirmed that the fraud-on-the-market presumption "does not rest on a 'binary' view of market efficiency," but instead is based on the "fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'" *Halliburton II*, 573 U.S. at 272. Lead Plaintiff needs only show that the stock traded in a "generally efficient market" at the class certification stage. *Id*. at 279.[5]

Lead Plaintiff amply demonstrates these requirements. The alleged misstatements were publicly available. AC ¶¶ 64-75. Additionally, Franklin common stock shares traded in an efficient market, as explained below. There is also no question that Lead Plaintiff, and other Class members, purchased Franklin common stock at market prices after the misstatement was made and before the truth was revealed. *See id*. ¶¶ 12, 5-7,

---

[5] *Halliburton II* also held that "plaintiffs need not directly prove price impact to invoke the *Basic* presumption," 573 U.S. at 279; rather, "it is incumbent upon the defendant to show the absence of price impact." *Id*. at 284 (Ginsburg, Breyer, and Sotomayor, JJ., concurring). Defendants will be unable to do so here.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

76-80. As a result, the fraud-on-the-market presumption applies. *Basic*, 485 U.S. at 247. Because Lead Plaintiff bought Franklin common stock during the Class Period and suffered losses when the truth was disclosed, AC ¶¶ 12, 5-7, 76-80, the "relevant transaction" occurred at the necessary time. *Diamond Foods*, 295 F.R.D. at 247.

Defendants do not dispute, and have expressly admitted, that the markets for Franklin's securities were efficient at all relevant times, including at all times during the Class Period  Defendants' Answer to Amended Complaint ¶ 90.

Defendants are correct.  In other matters where market efficiency is disputed, "[t]o determine whether a particular security traded in an efficient market, the Ninth Circuit looks to the nonexclusive factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285–87 (D.N.J. 1989))." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (adopting the *Cammer* approach).  Courts in the Ninth Circuit continue to apply *Cammer* to ascertain whether a market is efficient for purposes of applying the fraud-on-the-market presumption. *See, e.g., In re Montage Tech. Grp. Ltd. Secs. Litig.*, 2016 WL 1598666, *8 (N.D. Cal. Apr. 21, 2016).

The five *Cammer* factors are:  (1) whether the stock trades at high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file a Form S–3 registration statement with the SEC; and (5) whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Hodges*, 274 F.R.D. at 268.

In *Halliburton II* the Court clarified the standard for fraud-on-the-market. *Halliburton II*, 134 S. Ct. 2398. Halliburton II reaffirmed the efficient market presumption in Basic, and that the prerequisites to the presumption required a showing that: (i) the misrepresentation or omission of fact was material,[6] (ii) was issued publicly,

---

[6] With respect to materiality, allegation will suffice. Proof of materiality is not required at the class certification stage. *Id.*, 134 S. Ct. at 2416 ("Even though materiality is a prerequisite for invoking the Basic presumption, we held that it should be left to the

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

and (iii) the security traded in an efficient market.  Notably, the Court clarified that these prerequisites were really proxies for the fact that underlies the presumption of reliance: that the misrepresentation or omission affected the market price of the security (i.e., "price impact").  *Id.* at 2415.  *Halliburton II* further clarified that a plaintiff can show fraud on the market either by providing evidence that the company's stock generally traded on an efficient market, or by direct evidence that the misleading statement had a price impact.  *Id.*  Defendants, by the same token, may also show a lack of price impact by direct evidence. *Id.*

Additionally, in *Halliburton II*, the Supreme Court confirmed that market efficiency for purposes of the fraud-on-the-market presumption is not tied to any academic strain of market efficiency.  *Id.* at 2408 (rejecting notion that efficiency related to "any particular theory of how quickly and completely publicly available information is reflected in market price.").  Instead, it is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices."  *Id.*  (quotation and citation omitted).  Accordingly, "[d]ebates about the precise degree to which stock prices accurately reflect public information are thus largely beside the point." *Id.* at 2410.

The holding that a plaintiff need not show price impact directly leaves unchanged lower court precedent establishing that a plaintiff who shows that a stock trades on an efficient market is entitled to a presumption of reliance. But plaintiffs may now also show that they are entitled to a presumption of reliance through direct evidence that the misrepresentation or omission had an impact on the stock's price (i.e., caused the price to be inflated).

### i.   Franklin Common Stock Shares Were Listed and Traded on the NASDAQ, a Presumptively Efficient Market

---

merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3). We reasoned that materiality is an objective issue susceptible to common, classwide proof….We also noted that a failure to prove materiality would necessarily defeat every plaintiff's claim on the merits; it would not simply preclude invocation of the presumption and thereby cause individual questions of reliance to predominate over common ones.") (citations omitted).

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Defendants admit that the markets for Franklin's securities were efficient at all relevant times.  Defendants' Answer to Amended Complaint ¶ 90.  Indeed, at all relevant times, Franklin common stock shares were listed and traded on the NASDAQ.  Sorescu Report ¶¶ 15, 31. "[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency." *Radient*, 287 F.R.D. at 573 n.7.  This supports invoking the presumption of reliance.  Sorescu Report ¶ 15.

### ii.   *Cammer* 1:  Weekly Trading Volume

*Cammer* noted that an average weekly turnover "of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one." *Cammer*, 711 F. Supp. at 1286.  "A high average trading volume supports a finding of market efficiency, because it 'implies significant investor interest in the company,' and that interest 'implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information.'" *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015) (quoting *Cammer*, 711 F. Supp. at 1286).  Franklin's common stock shares easily meet this standard, as their average weekly trading volume during the Class Period was 1.22%, which is above *Cammer's* 1% threshold, indicating an efficient market. Sorescu Report ¶ 24, Ex. 2.  *See, e.g., Petrie*, 308 F.R.D. at 349 (stating that, under *Cammer*, the average weekly trading volume of 3.3% "justifie[d] a strong presumption of an efficient market").

### iii.   *Cammer* 2:  Analyst Coverage

Franklin common stock shares were the subject of broad analyst and news coverage during the Class Period.  At least 15 analysts issued reports regarding Franklin during the Class Period.  Sorescu Report ¶ 26, Ex. 3.  This factor strongly supports market efficiency. *STAAR Surgical*, 2017 WL 821662, at *7 (finding market efficiency where "[a]t least six different securities analysts covered STAAR and provided investment recommendations regarding its stock").

### iv.   *Cammer* 3:  Market Makers

16

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

*Cammer* noted that the "existence of market makers . . . would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286–87. This factor also strongly supports market efficiency.

As stated above, Franklin common stock shares traded on the NASDAQ, which is widely regarded as one of the most open, developed, and efficient exchanges in the world. Sorescu Report ¶¶ 28–32. During the Class Period, Franklin had twenty-five market makers that traded Franklin stock on the NASDAQ. *Id*. ¶ 31. *See, e.g., Vinh Nguyen*, 287 F.R.D. at 572–73 (at least one market maker supported market efficiency).

### v.    *Cammer* 4:  Eligibility to File SEC Form S-3

Franklin met the eligibility requirements to file simplified SEC filings on Form S-3 throughout the Class Period. Sorescu Report ¶ 39. This factor supports market efficiency for Franklin Common Stock during the Class Period as companies are only permitted to make such simplified filings if the SEC believes "that the market operates efficiently for these companies." *Cammer*, 711 F. Supp. at 1284 (quoting SEC Securities Act Release No. 6331 (Aug. 13, 1981)).

### vi.    Cammer 5:  The Relationship Between News Events and Security Price Changes

*Cammer* noted that "one of the most convincing ways to demonstrate [market] efficiency would be to illustrate, over time, a cause and effect relationship between the company disclosures and resulting movements in stock price." 711 F. Supp. at 1291. Though "[c]ourts have rejected the idea that the fifth *Cammer* factor is necessary to establish market efficiency," *DFC Glob. Corp*., 2016 WL 4138613, at *12, Plaintiff nonetheless provides far more than necessary support here. Specifically, to further substantiate market efficiency, Plaintiff provides Dr. Sorescu's event study as a means to establish the cause and effect relationship between the company disclosures and resulting movements in stock price, more than satisfying *Cammer* 5. Event studies seek "to show

17

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

that the market price of the defendant's stock tends to respond to pertinent publicly reported events." *Halliburton II*, 573 U.S. at 280. "An event study is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a corporation's stock price." *Diamond Foods*, 295 F.R.D. at 247. "[E]vent studies . . . are generally accepted by both the academic community and the courts as a reliable principle or method for determining whether a particular announcement by a company has caused the price of the company's stock to decline." *Sec. & Exch. Comm'n v. Jensen*, 2013 WL 12129377, at *5 (C.D. Cal. Mar. 13, 2013).

Dr. Sorescu conducted an event study using a widely accepted methodology and found "a clear cause-and-effect relationship between new company-specific information and Franklin Common Stock price movements. As a result, this price impact analysis supports the conclusion that Franklin's Common Stock traded in an efficient market during the Class Period." Sorescu Report ¶ 62.

Specifically, Dr. Sorescu evaluated whether Franklin's Common Stock responded to information disclosed in the Company's earnings announcements. He compared the stock returns and trading volume of Franklin Common Stock on the relevant trading days following Company earnings announcements versus those metrics on trading days that contained the least news during the Analysis Period (the "Least News Trading Days"). *Id*. ¶ 60.

In Ex. 6 to his report, Dr. Sorescu reports the event study results of Franklin's announcement dates during the Class Period. *Id*. ¶ 58. Overall, four of Franklin's Relevant News announcements caused stock price movements that were statistically significant at the 95% level. *Id*. Dr. Sorescu compared this rate with that on the Least News Trading Days in Ex. 7 to his report. *Id*. Ex. 7 summarizes the statistical comparison of Franklin's stock returns and trading volume during the sixteen Relevant News Days versus these metrics as measured on the Least News Trading Days. *Id*. ¶ 59. The Least News Trading Days include 106 observations, meaning that the tests of statistical significance are based on 112 observations. *Id*. As shown in Ex. 7, "25.0% of the

Relevant News announcements caused stock movements that were statistically significant at the 95% level.  This compares to 5.66% of the Least News Trading Days with statistically significant stock price movements." *Id*.  *See In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 367–68 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom*. *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ("In other words, there were more likely to be big price movements on days when important Petrobras events occurred," demonstrating that the "markets in [these] securities were responsive to new information.").

Additionally, Ex. 7 shows that "the average of the absolute value of stock price movements during Franklin Wireless' Relevant News Days was 4.81%.  This compares to an average of only 2.28% on the Least News Trading Days.  This further supports a finding of a strong cause-and-effect relationship between information and Franklin Wireless Common Stock price movements."  Sorescu Report ¶ 60.

Furthermore, Ex. 7 "reports an average daily trading volume of 19,963.69 shares for Franklin Wireless Common Stock during Relevant News Days.  This compares to an average daily trading volume of 13,420.31 shares during Least News Trading Days.  The difference between the two averages (6,543.38 shares) is statistically significant at the 5% level ($p=0.0456$), providing further evidence of the cause-and-effect relationship between information and Franklin Wireless's Common Stock price movements."  *Id*. ¶ 61.

### vii.    Additional Factors Further Establish Market Efficiency

"The *Cammer* factors are an analytical took, not a checklist of requirements, and can be supplemented by other measures, such as (6) the company's market capitalization; (7) the bid-ask spread; (8) the float, or issue amount outstanding excluding insider-owned securities; and (9) the percentage of institutional ownership."  *Petrie*, 308 F.R.D. at 349.

### 1)    Additional Factor 1:  Market Capitalization

Franklin's market capitalization ranged between $143.4 million and $294.6 million throughout the Class Period and averaged $230.5 million over the Class Period. Sorescu

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Report ¶ 42, Ex. 8.  Franklin's number of shares outstanding ranged from 10.6 million shares to 11.6 million shares during the Class Period.  *Id*.  According to Dr. Sorescu, "the market capitalization is consistent with the conclusion that the Common Stock traded in an efficient market during the Class Period."  *Id*. ¶ 42.  This supports market efficiency.  *See, e.g., Angley*, 311 F. Supp. 3d at 1121 (considering evidence of market capitalization among other *Krogman* factors and finding market efficiency).

### 2)    Additional Factor 2:  Bid-Ask Spread

The narrow bid-ask spread for Franklin common stock supports efficiency.  "A large bid-ask spread is indicative of an inefficient market, because it suggests that the stock is too expensive to trade."  *Krogman*, 202 F.R.D. at 478.  Dr. Sorescu analyzed the bid-ask spread of Franklin's common stock during the Class Period.  Sorescu Report ¶ 44.  In Ex. 9 to his Report, he reports "the monthly average bid-ask spread as a percentage of the bid-ask midpoint over this time period.  Upon review, one can see that Franklin Wireless's bid-ask spread fluctuated between 0.2% and 13.5% over the course of the class period, with a low of 0.23% in November 2020 and a spike of 13.5% on the last day of the class period in April 2021."  *Id*.  Excluding the outlier date of April 8, 2021 (when Verizon announced it would no longer be selling the Franklin products that are the subject of the Complaint), the average bid-ask spread is 2.65%.  Sorescu Report ¶ 45.

### 3)    Additional Factor 3: Public Float

When evaluating efficiency, "courts also consider the percentage of shares held by the public, rather than insiders," known as the float.  *Krogman*, 202 F.R.D. at 478.  A larger float may be an indicator of market efficiency.  Sorescu Report ¶ 46.  Throughout the Class Period, "[Franklin] insider holdings never exceeded 28.64% of shares outstanding for Franklin Wireless during the Class Period (average=27.85%)."  *Id*., Ex. 10.  "Therefore, approximately 72.15% of Franklin Wireless Common Stock was held by institutions and other outside investors during the Class Period.%)."  *Id*.  The large percentage of Franklin common stock shares in the float supports market efficiency.  *Id*.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

### 4)    Additional Factor 4: Institutional Ownership

Institutional investors can improve market efficiency by digesting new public information and making investment decisions over large block holdings of shares, thus causing the new information to be quickly incorporated in stock prices.  Thus, the presence of institutional shareholders can be an indicator of market efficiency.  Sorescu Report ¶ 33; *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 (11th Cir. 2014) (stating that "the presence of institutional investors can contribute to a market efficiency finding" and finding market efficiency where the number of institutional investors holding the defendants' stock during the class period ranged from 329 to 425).

Here, at least 25 institutions held the stock at some point during the Class Period. "[T]he significant institutional ownership base for Franklin Wireless Common Stock supports the conclusion that the Common Stock traded in an efficient market during the Class Period." Sorescu Report ¶ 35, Ex. 10.  *See, e.g.*, *Loritz v. Exide Techs.*, 2015 WL 6790247, at *16 (C.D. Cal. July 21, 2015) (finding market efficiency where the defendants notes were held by 88 different institutions).

### 5)    Additional Factor 5:  Autocorrelation

Another factor to consider is whether a security demonstrates autocorrelation.  "A security exhibits autocorrelation if the change in price of the security on a given day provides an indication of what the change in price for the security will be on the following day." *Petrie*, 308 F.R.D. at 356.  Dr. Sorescu's report further explains that "if statistically significant autocorrelation in stock returns persists over a sufficient time period such as several quarters, and is large enough in magnitude that a trader could earn riskless profits after trading costs, this would imply market inefficiency because publicly-available information about prior stock price movements would not be fully reflected in current stock prices." Sorescu Report ¶ 63.

Using an established methodology, i.e., a regression analysis, to test for autocorrelation in Franklin's common stock returns, Dr. Sorescu found "[t]he

21
NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

autocorrelation coefficient over the full Class Period is not statistically significant" and "no evidence of persistent autocorrelation in Franklin's Common Stock returns" which further "supports the conclusion that Franklin's Common Stock traded in an efficient market during the Class Period." *Id*. ¶¶ 67–68, Ex. 12; *see Petrie*, 308 F.R.D. at 356 (lack of autocorrelation weighs in favor of class certification).

### 3. The Proposed Damages Model Establishes a Method for Proving Damages on a Class Wide Basis

For damages questions to predominate, Plaintiffs must "show that their damages stemmed from the defendant's actions that created the legal liability" and can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 514. The Ninth Circuit has repeatedly confirmed that "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016). This is especially true in securities cases, where, once liability is established, "the process of computing individual damages will be virtually a mechanical task." *Diamond Foods, Inc.*, 295 F.R.D. at 252."). "Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010).

Dr. Sorescu's report demonstrates that per-share damages can be determined on a Class-wide basis by a well-established and formulaic "out-of-pocket" method of calculating damages for all Class members. Sorescu Report ¶¶ 66–68.

Similarly, loss causation calculations can be performed on a class-wide basis and are not dependent upon individual class member identities or circumstances. *Id*. ¶¶ 69–71. That is more than sufficient at this stage. *Leyva*, 716 F. 3d at 514; *Twitter*, 326 F.R.D. at 630. "Rule 23(b)(3) requires only that plaintiffs be able to show that their damages stemmed from the defendant's actions that created the legal liability." *In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 217–18 (internal quotation marks omitted). Thus, Lead Plaintiff need not, at this stage of the proceedings, provide a loss causation model

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

or actually calculate damages. *See Halliburton I*, 563 U.S. at 809–15; *see also Hatamian*, 2016 WL 1042502, at *9 ("Plaintiffs need not show loss causation as a condition of class certification.").

Because the evidence and methodology for calculating the daily artificial inflation, and thus damages, are both common to the Class and applicable on a classwide basis, common issues concerning damages predominate. *See SEB*, 335 F.R.D. at 288; *In re Lendingclub*, 282 F.Supp.3d at 1184.

### 4.    A Class Action Is the Superior Method for This Controversy

As the Ninth Circuit has emphasized, the superiority inquiry "calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). "If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud." *Radient*, 287 F.R.D. at 575.

Here, the superiority of class treatment is particularly evident upon consideration of the four factors set forth in Rule 23(b)(3): "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Montage*, 2016 WL 1598666, at *13. Class members are too numerous and too geographically dispersed, and the typical claim too small, for individual actions against well-financed adversaries to be feasible. *See Montage, 2016 WL 1598666, at *13; BofI II*, 2021 WL 3742924, at *10 (superiority established in securities class action case).

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests entry of an Order certifying this action as a class action, appointing Lead Plaintiff as the Class Representative, and appointing Pomerantz LLP as Class Counsel.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB

Dated: July 22, 2022

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Austin P. Van*

Jeremy A. Lieberman (admitted *pro hac vice*)
Austin P. Van (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
avan@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and the proposed Class*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: (310) 692-8883
Facsimile: (212) 697-7296
lesley@portnoylaw.com

*Additional Counsel*

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, a copy of the foregoing was filed electronically.   Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

/s/ Austin P. Van
Austin P. Van

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, Case No. 3:21-CV-00687-AJB-MSB