Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
Christopher M. Ferri (SBN 344112)
cmf@smlavvocati.com
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
La Jolla, CA 92037
Tel. 949.636.1391

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN,<br><br>Defendants. | Case No. 3:21-cv-00687-AJB-MSB<br><br>**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:  November 10, 2022<br>Time:  2:00 p.m.<br>Ctrm:  4A<br><br>Honorable Anthony J. Battaglia |

Pursuant to this Court's Scheduling Order (*see* ECF No. 44 at 2), Defendants oppose as follows the Motion for Class Certification.  *See* ECF No. 41.[1]

---

[1] Filed herewith is the Declaration of William Bauer and Exhibits 1-2.

**Factual Background**

Defendant Franklin Wireless Corporation ("Franklin") is a global leader in innovative hardware and software products that support machine-to-machine applications and the internet of things, as well as intelligent wireless solutions including mobile hotspots, routers, and modems. *See* Bauer Decl. ¶ 2. Defendant O.C. Kim is Franklin's President and CEO, and Defendant David Brown is Franklin's Director of Finance and Acting CFO. *See id.* ¶ 3. Franklin joined NASDAQ only just recently on March 29, 2021. *See id.* ¶ 4. Franklin's common stock is listed on the NASDAQ exchange and traded under the ticker symbol "FKWL." *See id.* Franklin's outstanding shares number about 11.68 million with around 28% of these outstanding shares held by insiders. *See id.* ¶ 5. Franklin presently has a total market cap of approximately $33 million, and its non-objecting beneficial shareholders number about 478 accounts with more than 200 shares. *See id.*

On April 8, 2021, one of Franklin's customers—Verizon Wireless—announced it was recalling its Jetpack mobile hotspot device imported by Franklin after receiving reports of incidents involving approximately 15 units (out of over 2.5 million). *See id.* ¶ 6, Ex. 1. A week prior, Franklin had issued a press release that it was "notified of reports of battery issues in some of its wireless hotspot devices" and "is working with its battery and device manufacturing partners and carrier customer to determine the cause and extent of the problem." *See id.* ¶ 7. In fact, Franklin had already been addressing the situation for many months prior, since its first awareness of the relevant circumstances. *See id.* ¶ 8. In a subsequent press release on April 9, 2021, Franklin acknowledged the Verizon recall issued the day before. *See id.* ¶ 9, Ex. 2.

Case No. 3:21-cv-00687-AJB-MSB

In its operative Amended Complaint, Plaintiff alleged violations of Rules 10(b) and 20(a) of the Exchange Act, and now seeks class certification.  The Complaint alleges that Franklin made "false and misleading statements" and "knew that such statements, when made, were false and misleading, or were reckless in their disregard as to the truth of such statements, which contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  ECF No. 26 at 26-29 (¶¶ 95-105) (individual defendants allegedly "had the power to influence and control, and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements").  Franklin denies any liability based in principal part on its prompt, diligent efforts to address the circumstances leading to the Verizon recall, and its similarly prompt, diligent efforts to disclose all relevant material information to its shareholders.  *See, e.g.*, ECF No. 27.

In the present motion for class certification, Plaintiff asserts that a class should be certified based in principal part on its contentions of (a) numerosity because "there are thousands of geographically dispersed members of the proposed Class," (b) common questions because "common proof will be used to answer many questions of law and fact, including . . . [w]hether reliance is presumed under the fraud-on-the-market doctrine," (c) typicality because "Lead Plaintiff and Class members all purchased Franklin common stock shares and assert the same Section 10(b) claims," (d) "Plaintiffs possess the same interest and suffer[ed] the same injury and the class members," and (e) "lead plaintiff and the class are entitled to the presumption of reliance because Franklin common stock shares traded in an efficient market."  *See* ECF No. 41 at 5-23.  Franklin disputes that each and all of the many requirements for class certification have been (or could be) satisfied.

-3-

There are not "thousands" of members in the proposed class. There is not extensive litigation regarding the issues. To the contrary, in the almost 18 months since the Verizon recall, there have been only three other distinct lawsuits filed against Franklin based on similar allegations. *See* Bauer Decl. ¶ 12.[2] Plaintiff's request for class certification here is merely a self-serving attempt by Plaintiff's counsel to benefit not any claimants, but only Plaintiff's counsel. As such, this Court should deny any class certification.

### Legal Standard

When determining whether to certify a class, the requirements of Rule 23 must be met. *See, e.g,. In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 245 (N.D. Cal. 2013). Rule 23(a) requires that any potential class must satisfy each of four requirements before it can be certified: (1) ***the class is so numerous*** that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See id.* (emphasis added). As Rule 23(b) requires further, "A class action may be maintained if Rule 23(a) is satisfied and if:"

> (1) prosecuting ***separate actions*** by or against individual class members ***would create a risk*** of: (A) ***inconsistent or varying adjudications*** with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the

---

[2] Two of the three actions are consolidated and proceeding already in this very Court. *See In re Franklin Wireless Derivative Litigation*, Case No. 3:21-cv-01837-AJB-MSB (S.D. Cal.); *see also Pape v. Franklin Wireless et al.*, Case No. CV22-00471 (County of Washoe, Nevada).

Case No. 3:21-cv-00687-AJB-MSB

other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that ***a class action is superior to other available methods for fairly and efficiently adjudicating the controversy***.  The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy ***already begun by or against class members***; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* (emphasis added).

Importantly, while there is no specific number of potential plaintiffs required for "numerosity," generally classes of "at least forty members presumptively satisfies [this] requirement." *Vinh Nguyen v. Radient Pharms. Corp.,* 287 F.R.D. 563, 569 (C.D. Cal. 2012).  In securities cases, numerosity is generally presumed only when millions of shares are traded during the proposed class period. *See, e.g., In re Cooper Cos., Inc. Sec. Litig.,* 254 F.R.D. 628, 633 (C.D. Cal. 2009), *In re Snap Inc. Sec. Litig.,* 334 F.R.D. 209, 226 (C.D. Cal. 2019).  "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.,* 986 F.3d 773, 771 (7th Cir. 2021).  Additionally, "a putative class over 40 is not inevitably endowed with numerosity status.  The obligation imposed by Rule 23(a) remains: a plaintiff

seeking to certify a class must show that joinder would be impracticable." *Id.* at 773.

**Argument**

Here, Defendants contend that the proposed class should not be certified because the circumstances do not support satisfying the principal required factor of numerosity.  Under the circumstances of Franklin's status as a small-cap company with relatively few shareholders, it is incredibly unlikely to the point of improbable that the proposed class is large enough to satisfy the numerosity requirement. Plaintiff's expert claims that 2,172,393 shares of Franklin Wireless stock were traded during the 203 days of the proposed class period.  This equates to about 10,700 shares a day, which is by no means a high-volume stock.  *See* Bauer Decl. ¶ 10; *see also* Rebecca Lake, *Should You Pay Attention to a Stock's Trading Volume,* smartasset.com (Apr 12, 2022), https://smartasset.com/financial-advisor/high-volume-stocks#:~:text=Stocks%20can%20be%20categorized%20as,or%20more%20shares%20per%20day (stating "high volume stocks typically trade at a volume of 500,000 or more shares per day).  Additionally, Franklin Wireless does not occupy a large portion of the market to begin with, with around 12 million shares currently outstanding.  *See* Bauer Decl. ¶ 5.  Franklin knows of fewer than 1000 beneficial shareholders in the public market, based on its most recent NOBO list obtained from Broadridge.  *See id.* ¶ 11.  This is a far cry from the "thousands of geographically dispersed members of the proposed Class" that Plaintiffs seem to believe exists.

Of those existing shareholders, it is incredibly unlikely that joinder would be impracticable given their "geographic dispersion, overall size, and small dollar amounts involved with each individual claims." *See Anderson*, 986 F.3d at 771. Additionally, given the small number of total shareholders and the relatively small trading volume, likely there are very few shareholders interested in asserting

-6-

Plaintiff's claims in the first place.  Most importantly, in the nearly 18 months since the Verizon recall, there have been only three other distinct lawsuits filed against Franklin based on similar allegations, none of which similarly allege that Franklin or any of its officers violated Section 10(b) of the Securities Exchange Act and or SEC Rule 10b-5.

The potential members of Plaintiff's proposed class simply do not exist, let alone are there enough geographically dispersed and separate potential plaintiffs that joinder of any potential class member would be impracticable.  The court in *Anderson* affirmed a lower court's decision to deny class certification because Plaintiff Anderson did not substantiate that joinder would be impracticable.  In fact, there were even two members of the proposed class outside the State of Wisconsin, and Anderson "presented no evidence showing that coordinating with the two out-of-state class members would present such difficulties that joinder . . . would be impracticable."  *See Anderson*, 986 F.3d at 771.  The court went further, stating that "as the party with the burden of proof, Anderson needed to attend diligently in the district court to the demands of Rule 23," which it did not.  *See id.* at 773 (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (explaining that a plaintiff "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity").  Here, Plaintiff simply argues without specific facts that "the proposed class is so numerous that joinder of all members is impracticable," and rely on a presumption that numerosity is established "when millions of shares are traded during the proposed class period."  Plaintiff cites no facts about whether joinder is impracticable, and in fact they have not inquired into the locations or identities of any particular shareholders of Franklin in order to determine whether joinder ***actually would be impracticable***.  All Plaintiff have done is "[speculate] as to the size of the class in order to prove numerosity."  *See Valentino v. Howlett,*

528 F.2d 975, 978 (7th Cir. 1976).  Therefore, Plaintiff has not properly established numerosity, and the class should not be certified.

## Conclusion

For each of the foregoing reasons, Defendants respectfully request that this Court should deny class certification because, at the very least, Plaintiff has not satisfied the numerosity requirement.

Respectfully submitted,

Dated:  September 12, 2022        **SML Avvocati P.C.**

By:   /s/ Stephen M. Lobbin
      Attorneys for Defendants

## **PROOF OF SERVICE**

I hereby certify that on September 12, 2022, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

Dated:  September 12, 2022                  /s/ Stephen M. Lobbin

Case No. 3:21-cv-00687-AJB-MSB