UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN,<br><br>Defendants. | Case No.: 3:21-cv-00687-AJB-MSB<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>**(Doc. No. 41)** |

Before the Court is Lead Plaintiff Gergely Csaba's ("Lead Plaintiff") Motion for Class Certification. (Doc. No. 41.) Defendants Franklin Wireless Corporation ("Franklin" or the "Company"), O.C. Kim, and David Brown (collectively "Defendants") filed an opposition, to which Lead Plaintiff replied. (Doc. Nos. 47, 48.) For the reasons set forth below, the Court **GRANTS** Lead Plaintiff's motion.

**I.    BACKGROUND**

On April 16, 2021, Mohammed Usman Ali filed a Class Action Complaint against Defendants for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). On September 15, 2021, the Court appointed Gergely Csaba as Lead Plaintiff and

Pomerantz LLP ("Pomerantz") as Lead Counsel pursuant to section 21D(a)(3)(B) of the Exchange Act.

The operative pleading in this case is the Amended Complaint ("FAC"). (Doc. No. 26.) The FAC details that Franklin is a provider of wireless solutions, including mobile hotspots, routers and modems, and markets and sells its products directly to wireless operators, as well as indirectly through partners and distributors. (*Id*. at 5.) According to the FAC, Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by misleading the market to believe that the Company had no knowledge that its mobile hotspot devices were manufactured with defective lithium-ion batteries. (*Id.*) The FAC alleges that during the class period, Franklin knew, but did not disclose that the hotspot devices were manufactured with defective lithium-ion batteries that posed a serious safety hazard because the batteries could overheat and cause severe burns and, in some cases, catch fire. (*Id.* at 5, 11–18.) Defendants filed an Answer, and Lead Plaintiff now seeks class certification. (Doc. Nos. 27, 41).

## II.     LEGAL STANDARD

A plaintiff seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In addition to meeting the conditions imposed by Rule 23(a), the party seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2) or (3)." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

The plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines the plaintiff has carried

his or her burden. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158–61 (1982); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).[1] The court must conduct a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Ultimately, the class certification determination is committed to the court's discretion. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001).

## III.  DISCUSSION

Lead Plaintiff seeks to certify the following class:

> All persons and entities other than defendants who purchased or otherwise acquired Franklin Wireless Corporation ("Franklin" or the "Company") common stock between September 17, 2020 and April 8, 2021 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

(Doc. Nos. 26 at 4, 41 at 10.) Apart from focusing solely on the numerosity requirement under Rule 23(a)(1), Defendants do not meaningfully dispute that Lead Plaintiff's proposed class meets the Rule 23 standards. (Doc. No. 47 at 6–8.) The Court, however, will nevertheless independently evaluate whether Lead Plaintiff has met each prerequisite to certification. *See Gen. Tel.*, 457 U.S. at 161 (class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites" have been satisfied).

### A.  Rule 23(a) Requirements

Rule 23(a) sets forth four requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The Court considers each in turn.

---

[1] All internal case citations, quotations, and alterations are omitted unless otherwise indicated.

**1.   Numerosity**

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility'"; rather, the inquiry focuses on the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). In determining whether numerosity is satisfied, the court may draw reasonable inferences from the facts before it. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977); *Astiana*, 291 F.R.D. at 501.

According to Lead Plaintiff, "a total of 2,172,392 million shares of Franklin Wireless Common Stock was traded by investors" on the NASDAQ during the class period. (Doc. No. 41-2 at 10.) Because Franklin has millions of shares trading on a national exchange, Lead Plaintiff argues, the Court may infer that numerosity is met. Lead Plaintiff further asserts there are thousands of geographically dispersed members of the proposed class, whose identities can be readily ascertained from securities brokerage and nominee firms' books and records.

Defendants contend that numerosity is not met because "Franklin knows of fewer than 1000 beneficial shareholders in the public market" and that such number "is a far cry" from the thousands of class members Lead Plaintiff believes exist. (Doc. No. 47 at 6.) Defendants also argue that Lead Plaintiff has not shown that joinder would be impracticable. These arguments are unavailing.

As Defendants concede in their brief, numerosity is generally presumed to be met in classes of at least 40 members, and in securities cases where millions of shares are traded during the proposed class period. Defendants make no argument that the proposed class number fewer than 40. (*See id.* at 6 (arguing only that there are likely less than 1,000 members).) Indeed, Defendants' briefing indicates there are at least 478 members—more

than enough to meet the numerosity requirement. *Slaven*, 190 F.R.D. at 654 ("numerosity is satisfied when class size exceeds 40 members").

Defendants have also not rebutted Lead Plaintiff's showing that Franklin had over 2 million shares trading on the NASDAQ during the class period. Consequently, the presumption of numerosity based on the numbers of nationally traded shares also apply in this case. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met.").

In support of their arguments against a finding of numerosity, Defendants cite *Anderson v. Weinert Enters.*, 986 F.3d 773 (7th Cir. 2021). (Doc. No. 47 at 6–7.) *Anderson*, however, is not binding on this Court, and in any event, readily distinguishable from this case. In *Anderson*, the Seventh Circuit Court of Appeals affirmed a district court's finding that numerosity was not satisfied where the proposed class "include[d] no more than 37 members" and "joinder of those 37 members was not impracticable." 986 F.3d at 775.

Here, as previously mentioned, Defendants themselves indicate there are at least over 400 members. And as to the impracticability of joinder, there is no indication that an overwhelming majority of the proposed class lives within a 50-mile radius of the presiding court—as was the case in *Anderson*. See 986 F.3d at 777 ("All but two of the class members lived within a 50-mile radius of the courthouse in the Eastern District of Wisconsin where Anderson filed suit.") The Court agrees with Lead Plaintiff that considering Franklin's securities are traded on the NASDAQ to class members residing across the globe, it can reasonably infer that they do not all live within a 50-mile radius of San Diego, California. In further support of the inference, Lead Plaintiff lives in Hungary and movants Jack and Barbara Pape live in Arizona.

Accordingly, for the reasons stated and drawing reasonable inferences from Lead Plaintiff's assertions, the Court finds he has satisfied the requirement of numerosity. *See Gay*, 549 F.2d at 1332 n.5; *Astiana*, 291 F.R.D. at 501.

### 2. Commonality

Rule 23(a)(2) requires there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where claims "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The plaintiff's burden for showing commonality is "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by id.* at 338. Accordingly, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019.

Here, Lead Plaintiff asserts that there are many common factual and legal questions in this case, including:

> (i) Whether federal securities laws were violated by Defendants' conduct as alleged;
> (ii) Whether Defendants made any untrue statements of material fact or omitted to state any material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading;
> (iii) Whether Franklin and the Individual Defendants acted with the requisite level of scienter under Section 10(b) of the Exchange Act;
> (iv) Whether the Individual Defendants were controlling persons of the Company under Section 20(a) of the Exchange Act;
> (v) Whether and to what extent the prices of Franklin common stock shares were artificially inflated during the Class Period due to the alleged false and misleading statements or omissions;
> (vi) Whether reliance is presumed under the fraud-on-the-market doctrine; and
> (vii) Whether Lead Plaintiff and other members of the Class suffered damages, as well as the appropriate measure thereof.

(Doc. No. 41 at 16.) Defendants offer no argument to the contrary.

It is clear this case meets Rule 23(a)(2)'s minimum requirement that there be "even a single common question." *Dukes*, 564 U.S. at 359. As the above listed questions are core factual and legal issues common to the class, the Court finds Lead Plaintiff's proposed class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a)(3)'s typicality requirement provides that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel.*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). However, a court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508.

Here, Lead Plaintiff and the proposed class members all purchased Franklin common stock shares and assert the same Section 10(b) claims, based on the same misstatements/omissions by Defendants, and the same Section 20(a) claim of "control person" liability. Because Lead Plaintiff's claims arise from the same events that give rise to the other class members' claims and will utilize the same evidence and legal theories that apply to the class as a whole, they are typical of the class. Defendants have not presented a defense unique to Lead Plaintiff or otherwise shown that typicality is not met. Accordingly, the Court finds that Lead Plaintiff has satisfied typicality.

### 4. Adequacy

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this requirement, courts within the Ninth Circuit apply a two-part test, asking: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members?; and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class? *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

|   |   |
|---|---|
| 1 | Lead Plaintiff asserts, and the Court agrees, that both prongs are met here. Lead Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 626–27, and there is no indication of any actual or potential conflict. Lead Plaintiff has been actively involved in pursuing this litigation and is willing to serve as a representative party on behalf of the proposed class and understands his fiduciary as a class representative. (Doc. No. 41-4 at 3.) He attests to being "fully committed" to prosecuting this action in the best interest of the class and is prepared to give deposition testimony and to testify at trial. (*Id.*) Defendants do not dispute Lead Plaintiff's adequacy. Accordingly, the Court finds Lead Plaintiff will "fairly and adequately protect the interests of the class" and can be appointed as class representative. Fed. R. Civ. P. 23(a)(4). |

Lead Plaintiff asserts, and the Court agrees, that both prongs are met here. Lead Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 626–27, and there is no indication of any actual or potential conflict. Lead Plaintiff has been actively involved in pursuing this litigation and is willing to serve as a representative party on behalf of the proposed class and understands his fiduciary as a class representative. (Doc. No. 41-4 at 3.) He attests to being "fully committed" to prosecuting this action in the best interest of the class and is prepared to give deposition testimony and to testify at trial. (*Id.*) Defendants do not dispute Lead Plaintiff's adequacy. Accordingly, the Court finds Lead Plaintiff will "fairly and adequately protect the interests of the class" and can be appointed as class representative. Fed. R. Civ. P. 23(a)(4).

Lead Counsel is also well-qualified to represent the proposed class. The record shows that Pomerantz has and will continue to vigorously prosecute the claims of the class and submitted documentary evidence of its experience in litigating securities-fraud class actions. (Doc. No. 41-3.) There is also no indication that the firm's interests are adverse to those of the class, and Defendants do not dispute Pomerantz's adequacy. Accordingly, the Court finds Pomerantz will fairly and adequately represent the interests of the class and can be appointed as class counsel. *See* Fed. R. Civ. P. 23(g)(2).

### B.   Rule 23(b)(3) Requirements

Next, certification under Rule 23(b)(3)—the subsection under which Lead Plaintiff seeks certification—is appropriate only where the plaintiff establishes that (1) issues common to the class predominate over issues affecting individual class members; and (2) the class action device is superior to other methods available for adjudicating the dispute. *See* Fed. R. Civ. P. 23(b)(3). The Court discusses these requirements in turn.

#### 1.   Predominance

The predominance analysis "focuses on the relationship between the common and individual issues." *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a

single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

The determination begins with the elements of the underlying cause of action. To recover damages for violation of § 10(b) and Rule 10b–5, a private plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

In the typical securities fraud case (like this case), the factual and legal issues related to most of these elements are common to the class, so the requirements for class certification are usually "readily met." *Amchem,* 521 U.S. at 625. The Court agrees with Lead Plaintiff that the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member. (Doc. No. 41 at 20–21.) Moreover, while the damages determination entails individualized inquiries, it does not by itself defeat class treatment under Rule 23(b)(3). *See Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). Additionally, Lead Plaintiff has shown that "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Id.* According to Lead Plaintiff's expert report, per-share damages can be determined on a class-wide basis by a well-accepted and formulaic out-of-pocket method of calculating damages for all class members. (Doc. No. 41-2 at 26.)

Lastly, to avoid the need to prove the reliance of individual investors, plaintiffs in securities fraud class actions ordinarily show reliance by establishing "fraud on the market," which gives rise to a rebuttable presumption of reliance. *Halliburton,* 573 U.S. at 268. "The fraud-on-the-market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a

buyer of the security may be presumed to have relied on that information in purchasing the security." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 458 (2013).

To establish the presumption, a plaintiff must show "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton,* 573 U.S. at 268. To make use of the presumption at the class certification stage, however, "[t]he only elements a plaintiff must prove at the class certification stage are whether the market for the stock was efficient and whether the alleged misrepresentations were public." *Connecticut Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013). A defendant may rebut the presumption, for example, "by appropriate evidence, including evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock." *Halliburton*, 573 U.S. at 279–80.

In this case, Lead Plaintiff has shown that Defendants' alleged misrepresentations and omissions were publicized in various releases, statements, and quarterly reports, (Doc. No. 26 at 18–20), and submitted a detailed expert report demonstrating that Franklin common stock shares traded in an efficient market over the course of the class period, (Doc. No. 41-2 at 5). Defendants have not offered any contrary evidence or otherwise suggested that the market was inefficient. The Court is satisfied, based on the unrebutted expert report, that the market was efficient, and thus, Lead Plaintiff has adequately established the prerequisites for invoking the presumption at this stage. Accordingly, the Court finds the predominance requirement satisfied.

### 2. Superiority

Superiority requires consideration of the following: (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in the particular forum; and (4) the

manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Amchem*, 521 U.S. at 615–16.

Here, Lead Plaintiff asserts that "class members are too numerous and too geographically dispersed, and the typical claim too small, for individual actions against well-financed adversaries to be feasible." (Doc. No. 41 at 32.) Considering the identical claims shared by at least over 400 members of the class, the relatively small size of the typical claim, and the geographical dispersion of the class members, the Court finds a class action the superior method to litigating this securities case. *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995) (shareholder claims based on identical facts and law fit Rule 23's requirements "like a glove").

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** the motion for class certification and **APPOINTS** Gergely Csaba as class representative, and Pomerantz LLP as class counsel. (Doc. No. 41.)

**IT IS SO ORDERED**.

Dated:  January 3, 2023

Hon. Anthony J. Battaglia
United States District Judge