UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN,<br><br>Defendants. | Case No.: 21-cv-00687-AJB-MSB<br><br>**ORDER DENYING WITHOUT PREJUDICE LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**(Doc. No. 63)** |

Before the Court is Gergely Csaba's ("Lead Plaintiff") motion for preliminary approval of class action settlement. (Doc. No. 63.) Franklin Wireless Corp., OC Kim, and David Brown ("Defendants") filed a notice of joinder in Lead Plaintiff's motion. (Doc. No. 66.) For the reasons set forth below, the Court **DENIES** the motion **WITHOUT PREJUDICE** to a renewed filing addressing the deficiencies identified herein.

I.  **BACKGROUND**

On April 16, 2021, Mohammed Usman Ali filed a Class Action Complaint against Defendants for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). (Doc. No. 1.) On September 15, 2021, the Court appointed Gergely Csaba as Lead Plaintiff

and Pomerantz LLP ("Pomerantz") as Lead Counsel pursuant to section 21D(a)(3)(B) of the Exchange Act. (Doc. No. 15.)

The operative pleading in this case is the Amended Complaint ("FAC"). (Doc. No. 26.) The FAC details that Franklin is a provider of wireless solutions, including mobile hotspots, routers and modems, and markets and sells its products directly to wireless operators, as well as indirectly through partners and distributors. (*Id.* at 5.) According to the FAC, Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by misleading the market to believe that the Company had no knowledge that its mobile hotspot devices were manufactured with defective lithium-ion batteries. (*Id.*) The FAC alleges that during the class period, Franklin knew, but did not disclose that the hotspot devices were manufactured with defective lithium-ion batteries that posed a serious safety hazard because the batteries could overheat and cause severe burns and, in some cases, catch fire. (*Id.* at 5, 11–18.) Defendants filed an Answer (Doc. No. 27), and discovery thereafter commenced with the parties exchanging documents on a rolling basis.

On January 3, 2023, the Court granted Plaintiff's motion for class certification and certified the following Class:

> All persons and entities other than defendants who purchased or otherwise acquired Franklin Wireless Corporation ("Franklin" or the "Company") common stock between September 17, 2020 and April 8, 2021 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

(Doc. No. 50.)

On May 1, 2023, the parties attended mediation with Jed D. Melnick, Esq., an experienced mediator. Prior to the mediation, the parties submitted comprehensive mediation statements setting forth the strengths and weaknesses of their case. The

mediation resulted in the parties' agreement to settle the action. The parties memorialized their agreement in a memorandum of understanding ("Memorandum"), which they fully executed on May 3, 2023. The Memorandum sets forth, among other things, the parties' agreement to settle and release all claims that were asserted or could have been asserted in the action in exchange for a payment by or on behalf of Defendants of $2,400,000 for the benefit of the Class. The instant motion for preliminary approval of class action settlement follows. (Doc. No. 63.)

## II.   TERMS OF THE PROPOSED SETTLEMENT

Lead Plaintiff, on behalf of himself and the Class, and Defendants Franklin Wireless Corp., OC Kim, and David Brown (collectively "Defendants") have executed a "Stipulation and Agreement of Settlement" ("Settlement Agreement"). (Doc. No. 63-2.) The primary terms of the Settlement Agreement are as follows.

### A. Settlement Amount

The parties agreed to settle the instant class action for $2,400,000 ("Settlement Amount") to be paid by Defendant in exchange for the release of claims. The Settlement Amount plus any interest earned thereon will be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. The remaining balance ("Net Settlement Fund") will be distributed to authorized claimants.

### B. Settlement Notice and Administration

The proposed Notice contains detailed information about this action, including what the lawsuit is about, why there is a settlement, who is included in the settlement, the settlement benefits, how to receive payment, how to object to or be excluded from the settlement, lawyer representation, and the final approval hearing. (Doc. No. 63-4.) The Notice also contains information of the proposed "Plan of Allocation" and the calculations to be used to determine a claimant's recognized loss per share of Frankin stock. (*Id.* at 21–30.)

//

The parties selected Epiq as "Claims Administrator" to administer the settlement. (Doc. No. 63-2 at 6.) Franklin will provide Epiq the names and addresses of the holders of Franklin Securities during the Class Period. Epiq will mail the Notice to class members. In addition, Epiq will publish a summarized version of the Notice ("Summary Notice") on a national business newswire and maintain a website containing a copy of the Notice, Summary Notice, Claim Form and Release Form, and Settlement Agreement.

According to the parties' Settlement Agreement, "Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable up to $250,000." (Doc. No. 63-2 at 17.)

### C. Attorneys' Fees, Costs, and Class Representative Award

The class Notice states that Lead Counsel will seek an award for attorneys' fees "in an amount not to exceed 33.33% of the Settlement Fund plus interest" and litigation expenses "in an amount not to exceed $300,000." (Doc. No. 63-4 at 5.)

### D. Releases

In exchange for Defendants' $2,400,000 payment, class members who do not opt out of the Class release the following claims against Defendants.

> [A]ny and all claims, demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and Unknown Claims, that have been or could have been asserted in any forum by the members of the Class, or the successors or assigns of any of them, in any capacity, arising out of, based upon or related in any way to the purchase, acquisition, sale, or ownership of Franklin Securities during the Class Period.

(Doc. No. 63-2 at 10–11.)

They do not include any claims relating to the enforcement of the Settlement Agreement; any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court; and any claims that already have been brought derivatively related to Franklin Securities during the Class Period. (*Id.* at 11.)

## III. LEGAL STANDARD

The Ninth Circuit has a strong policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A class action, however, may not be settled without approval of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (citing Fed. R. Civ. P. 23(e)). The primary concern is the protection of class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

Court approval of a settlement involves a two-step process—preliminary approval, followed by final approval of the settlement. *See In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009). The court need not review the settlement in detail at this juncture. *See id.* Preliminary approval and notice of the settlement terms to the proposed class are appropriate where the settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (3) falls with the range of possible approval. *See Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013). At the same time, however, "a district court may not simply rubber stamp stipulated settlements." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007).

## IV. DISCUSSION

Upon review of the proposed settlement and Lead Plaintiff's motion, the Court finds there are several deficiencies and insufficiently explained terms which prevent it from evaluating the fairness, adequacy, and reasonableness of the proposed settlement.

### A. Indeterminate Net Settlement Fund

To begin, neither the Settlement Agreement nor Lead Plaintiff's motion contain enough information for the Court to determine the Net Settlement Fund—the actual amount the Class stands to recover from the settlement. According to the Settlement Agreement,

the Net Settlement Fund will be what remains of the $2.4 million gross settlement after any attorneys' fees, litigation expenses, notice and administration costs, and taxes are paid. (Doc. No. 63-2 at 9.) The filings indicate Lead Plaintiff will be requesting attorneys' fees "in an amount not to exceed 33.33% of the Settlement Fund plus interest"; litigation expenses "in an amount not to exceed $300,000"; and notice and administration costs "up to $250,000." (Doc. Nos. 63-2 at 17; 63-4 at 4.) There is no indication of the projected amount of taxes to be paid.

| | |
|---|---:|
| Settlement Amount | $2,400,000 |
| Maximum Attorneys' Fees (33.33% of Settlement Amount) | ($799,920) |
| Maximum Litigation Expenses | ($300,000) |
| Maximum Notice and Administration Costs | ($250,000) |
| Taxes | (?) |
| **Net Settlement Fund** | **$1,050,080 minus taxes** |

From the numbers and percentages provided, the Net Settlement Amount is indeterminate and unlikely to yield $1 million. And while the Court recognizes that the litigation and administration costs are estimates, the amounts nevertheless appear excessive compared to those in other settlements of similar securities cases. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2022 WL 612804, at *4 (N.D. Cal. Mar. 2, 2022) (approving $7 million settlement and $95,634.04 litigation expenses.); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) (approving $133 million settlement and $176,501.78 litigation expenses).

In addition, Lead Plaintiff's filings do not specify the number of individuals in the Class or any estimated low-end, average, or high-end payments to be made to them. Nor is there an explanation as to why such numbers cannot be determined. Without more, the Court cannot ascertain whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C).

### B. Unequal Treatment of Class Members

Next, the proposed settlement appears to treat class members unequally. For

example, while the Plan of Allocation provides that the Net Settlement Fund will be distributed to claimants on a pro rata basis based on the relative size of their recognized claims, if a claimant's distribution amount is less than $10, it will not be included in the calculation and that claimant will not receive a distribution. (Doc. No. 63-4 at 26–27.) Lead Plaintiff's filings do not explain why this disqualification is fair or reasonable. *Cf. Fleming*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *2 (approving a settlement agreement that provided: "If any claimant's Distribution Amount calculates out to be less than $10.00, the claimant's Distribution Amount will be increased to $10.00.").

The proposed settlement also contains certain limitations on what will be deemed an eligible purchase or acquisition of Franklin shares for purposes of distribution. (Doc. No. 63-4 at 27.) For instance, unless certain criteria are met, the "receipt or grant by gift, inheritance or operation of law of Franklin Securities during the Class Period shall not be deemed a purchase or acquisition of Franklin securities for the calculation of an Authorized Claimant's Recognized Loss." (*Id.*) Also ineligible is the "receipt of Franklin securities during the Class Period in exchange for securities of any other corporation or entity." (*Id.*)

As previously described, the class definition includes all persons and entities "who purchased or otherwise acquired Franklin Wireless Corporation." (Doc. No. 50.) The additional criteria would therefore disqualify certain class members from obtaining relief, while at the same time, bind them to the settlement and release of claims. Because Lead Plaintiff provides no explanation for limiting relief to certain class members, the Court is unable to evaluate whether such difference in treatment is fair or reasonable. *See* Fed. R. Civ. P. 23(e)(2)(D) (requiring the court to consider whether "the proposal treats class members equitably relative to each other.").

**C. Redistribution of Remaining Funds**

Lead Plaintiff also has not adequately explained the process for redistribution of remaining funds. According to the proposal, if funds remain after initial distribution, the Claims Administrator will conduct a re-distribution "if Class Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so." (Doc. No. 63-4 at

7

29.) There is no indication what happens to the remaining balance if redistribution is determined not to be cost-effective. The Court therefore finds the proposed settlement additionally deficient in this regard. *Cf. Fleming*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *2 (approving a settlement that provided a cy pres designation for any remaining funds to Investor Protection Trust); *In re Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2022 WL 612804, at *2 (approving cy pres designation to Loyola University School of Law's Institute for Investor Protection).

**D. Overbroad Release**

Lastly, the proposed settlement's release provision is overbroad. While Lead Plaintiff's motion states that the release covers "all claims that were asserted or could have been asserted in the Action," (Doc. No. 63 at 10), the language in the Settlement Agreement is far more sweeping. The scope of the release covers any and all claims that have been or could have been asserted in any forum by the class members arising out of, or based upon or related in any way to, the purchase, acquisition, sale, or ownership of Franklin Securities during the Class Period. (Doc. No. 63-2 at 10–11.) It is not limited to only those claims that arise out of the factual allegations in the operative complaint.

Ninth Circuit case law indicates that release provisions are enforceable "only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir.2008)). As such, "[d]istrict courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue." *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (collecting cases).

Because the proposed release indiscriminately covers any and all claims arising out of the class members' ownership of Franklin shares during the Class Period—without regard to whether such claim arises out of, or bears any relation to, the allegations in the operative complaint—it does not merit approval. Lead Plaintiff has not provided any

8

argument or case law to the contrary.

***

Based on the foregoing deficiencies, the Court declines to grant the proposed Settlement Agreement.

## V. CONCLUSION

Accordingly, the Court **DENIES** Lead Plaintiff's motion for preliminary approval of class action settlement. (Doc. No. 63.) The denial is **WITHOUT PREJUDICE** to the filing of a renewed motion addressing the deficiencies identified in this Order. The renewed motion must be filed <u>no later than February 26, 2024</u> and contain information and case law authority establishing that the proposed settlement is within the range of possible approval.

**IT IS SO ORDERED.**

Dated: January 24, 2024

*[signature]*
Hon. Anthony J. Battaglia
United States District Judge