**POMERANTZ LLP**
Jennifer Pafiti (CA Bar No. 282790)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jpafiti@pomlaw.com
avan@pomlaw.com

*Counsel for Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiffs <br><br> v. <br><br> FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN, <br><br> Defendants. | Case No.:  3:21-cv-00687-AJB-MSB <br><br> **DECLARATION OF AUSTIN P. VAN IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND (2) AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFF** <br><br> <u>CLASS ACTION</u> <br><br> Hearing Date: October 10, 2024 <br> Time: 2:00 PM <br> Judge: Honorable Anthony J. Battaglia <br> Courtroom 4A (4th Floor – Schwartz) |

I, Austin P. Van, declare as follows:

1.    I am a Partner of the law firm of Pomerantz LLP ("Pomerantz"), court-appointed Class Counsel for Class Representative Gergely Csaba ("Plaintiff"), and counsel for the Class.  I was personally involved in the litigation of this securities class action.  I am an attorney duly licensed to practice law in New York and before this Court, on a *pro hac vice* basis.  I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.    I submit this declaration in support of Plaintiff's Motions for:  (1) Final Approval of Settlement and Plan of Allocation; and (2) Award of Attorneys' Fees and Expenses and Award to Plaintiff, filed concurrently herewith.[1]  This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Class Counsel's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiff are reasonable and should be approved by the Court.

3.    The Settlement creates a gross settlement fund of $2,400,000, plus accrued interest.  After attorneys' fees, reimbursement of expenses, award to Plaintiff, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Class consisting of "all persons and entities other than

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Amended Stipulation and Agreement of Settlement, filed on February 26, 2024 ("Amended Stipulation") (Dkt. No. 75-2).  Internal citations and quotations are omitted and emphasis is added unless otherwise noted.  Citations to "Suppl. Mahan Decl." are to the Supplemental Declaration of Joseph Mahan Regarding Notice of Dissemination, Publication, and Report on Objections or Requests For Exclusion Received to Date, attached hereto as **Exhibit 1**.  Citations to the "Mahan Decl." are to the Declaration of Joseph Mahan Regarding Notice of Dissemination, Publication, and Report on Objections or Requests For Exclusion Received to Date, which was filed with the Court on July 25, 2024 (ECF No. 80-1).  Citations to "Fee Brief" are to the Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiff, filed herewith.  Citations to "Final Approval Brief" are to the Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement and Plan of Allocation, filed herewith.

DECLARATION OF AUSTIN P. VAN; 3:21-cv-00687-AJB-MSB

defendants who purchased or otherwise acquired Franklin common stock between September 17, 2020 and April 8, 2021, inclusive." Amended Stipulation, ¶1(h).[2]

4.     The memorandum in support of Plaintiff's motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

5.     Attached hereto as **Exhibit 1** is a true and correct copy of the Supplemental Declaration of Joseph Mahan on Behalf of Epiq Class Action and Claims Solution, Inc. ("Epiq") Regarding Notice Administration ("Suppl. Mahan Decl."), dated September 19, 2024.

6.     Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Class Representative Gergely Csaba, dated September 19, 2024.

7.     Attached hereto as **Exhibit 3** is a true and correct copy of the detailed time records of Pomerantz in support of the motion for attorneys' fees.

**I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

**A.     FACTUAL BACKGROUND**

8.     A summary of Plaintiff's allegations is set forth in the Final Approval Brief, part II.

**B.     PROCEDURAL HISTORY**

9.     The Action was initiated on April 16, 2021, when the original complaint was filed in the U.S. District Court for the Southern District of California.  ECF No. 1.  On September 15, 2021, the Court appointed Gergely Csaba as Lead Plaintiff, and Pomerantz LLP as Lead Counsel.  ECF No. 14.  On November 15, 2021, Plaintiff

---

[2] Excluded from the Class are: "any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest." *Id.*

filed a Class Action Amended Complaint, ECF No. 26, asserting that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, by making materially false and misleading statements fraudulently implying that their core products, the Jetpacks, were functioning properly and were not suffering from any noteworthy defects when Defendants knew—but failed to disclose—that the Jetpacks had defective batteries that caused the devices to spark, catch fire, burn, explode, or otherwise combust, and so presented a risk of causing severe injury. Defendants did not move to dismiss the Amended Complaint. On January 14, 2022, Defendants filed their answer to the Amended Complaint. ECF No. 27.

10. Discovery commenced, and the parties exchanged document requests and interrogatories and began producing documents on a rolling basis.

11. On January 3, 2023, the Court granted Plaintiff's motion for class certification and certified the following Class:

> All persons and entities other than defendants who purchased or otherwise acquired Franklin Wireless Corporation ("Franklin" or the "Company") common stock between September 17, 2020 and April 8, 2021 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

ECF No. 50.

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

12. During discovery, the Parties agreed to engage in an in-person mediation session, and on April 6, 2023, the Parties filed a joint motion to stay the case pending mediation, ECF No. 57, which the Court granted on April 10, 2023. ECF No. 59.

13. On May 1, 2023, the Parties participated in a mediation session with Jed D. Melnick, Esq., an experienced mediator at JAMS. Prior to the mediation, the

parties submitted comprehensive mediation statements setting forth the strengths and weaknesses of their case.  During the mediation, the parties engaged in vigorous negotiations.  Ultimately, the Parties reached an agreement in principle to settle the Action.  The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed on May 3, 2023.  The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a payment by or on behalf of Defendants of $2,400,000 for the benefit of the Class.  The Memorandum of Understanding was formalized in a stipulation of settlement (the "Original Stipulation") that was executed on May 23, 2023.

14.    On May 24, 2024, Plaintiff submitted the Original Stipulation for the Court's Approval.  Plaintiff's Motion for Preliminary Approval, ECF No. 63.  The Court denied Plaintiff's Motion for Preliminary Approval without prejudice because of a lack of clarity with regards to the distribution of funds and the limits placed on claimants.  ECF No. 74, at p. 5-8.  The Court also denied approval of the Original Stipulation's release clause as overbroad.  ECF No. 74, at p. 8-9.  As a result, the Parties executed the Amended Stipulation on February 7, 2024 and Plaintiff renewed his motion for preliminary approval of the Settlement on February 26, 2024.  ECF No. 75.  Defendants filed a notice of joinder in Plaintiff's motion on March 1, 2024.  ECF No. 76.  After careful review, the Court granted the renewed motion and entered the Order Granting Plaintiff's Renewed Motion for Preliminarily Approval of Class Action Settlement ("Preliminary Approval Order") on April 22, 2024.  ECF No. 77.

15.    In the opinion of Class Counsel, the Settlement is fair, reasonable, and adequate and a strong result for the Class.  The Settlement confers a benefit on the Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely.  Additionally, the Plan of Allocation is a fair and

reasonable method for distributing the proceeds of the Settlement to Class Members. The Court should approve both the Settlement and the Plan of Allocation.

16.    As set forth herein and in the Final Approval Brief, the Settlement represents approximately 12.9% of the estimated damages of $18.6 million under Plaintiff's best-case scenario as estimated by Plaintiff's damages expert, despite significant risk.  This maximum estimated amount could only be recovered if:  (1) all the claims alleged and class certification status survive to trial; (2) a jury adopted Plaintiff's expert's damages model; (3) Plaintiff defeated any appeals; and (4) Defendants have the ability to pay such a judgment.

17.    A lump sum cash settlement in the face of these challenges is a favorable outcome.  In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

18.    For litigating this case on a contingency basis and negotiating this settlement, Class Counsel requests a fee of 33.33% of the Settlement Fund, or $799,920.00, plus interest earned thereon, and reimbursement of litigation expenses of $166,383.87. This fee request is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

19.    The favorable reaction of the members of the Class also supports the reasonableness of the Settlement and the fee request.  Pursuant to the Notice,[3] objections to the Settlement must have been received by August 1, 2024.  To date, I

---

[3] "Notice" collectively refers to the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Long Notice"), and the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice").  *See* ECF No. 75-4, 75-6 and Exhibits A-1 and A-3 to the Amended Stipulation.

have not received nor been informed of any objections to the Settlement, and the Claims Administrator has not received any objections. Suppl. Mahan Decl., ¶9. Plaintiff would address objections, if any, received by the August 1, 2024 deadline in their reply papers in support of final approval.[4]

20. Pursuant to the Notice, requests for exclusion from the Settlement must be received by September 18, 2024. To date, the Claims Administrator, Epiq, has not received any requests for exclusion. *Id.*, ¶8.

## III. NOTICE PROCEDURES

21. At Class Counsel's direction, and pursuant to the Preliminary Approval Order, on May 20, 2024, the Claims Administrator published the Summary Notice electronically on *Globe Newswire*. Mahan Decl. (ECF No. 80-1), ¶10, Ex. B. The Claims Administrator also published the Long Notice, Proof of Claim and Release Form ("Claim Form"), Amended Stipulation, and Preliminary Approval Order on Epiq's Settlement-specific website on May 20, 2024. *Id.*, ¶13-14.

22. To date, 2,704 Notice Packets have been disseminated to potential Class Members and nominees. Suppl. Mahan Decl., ¶4. Epiq mailed the Notice Packet to 1,765 individuals and organizations either identified in the record holder list provided to Epiq, and/or from Epiq's proprietary database. Mahan Decl. (ECF No. 80-1), ¶6. Epiq has since mailed additional Notice Packets in response to requests from potential Class Members, culminating in a total of 2,704 Notice Packets being disseminated to potential Class Members and nominees. Suppl. Mahan Decl., ¶4.

## IV. PLAN OF ALLOCATION

23. Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Mahan Decl. (ECF No. 80-1), Ex. A

---

[4] Plaintiff will file a proposed order granting final approval with his reply papers in support of final approval.

(Notice Packet), ¶46-64.  Class Counsel created the proposed Plan of Allocation after consulting with Plaintiff's expert and the Claims Administrator, designing it to reimburse Class Members in a fair and reasonable manner.  The Plan of Allocation is based in part on the same damages report Plaintiff used to estimate the maximum recoverable damages, and it closely tracks Plaintiff's theory of the case.

24.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who timely submit appropriate Claim Forms.    Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Class Counsel, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the relative size of the Authorized Claimant's Recognized Claims (which are the sum of their Recognized Losses for all shares of Franklin securities purchased or acquired during the Class Period).  Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

25.    The fairness of the Settlement is not disturbed by the provision in the Amended Stipulation that does not pay *de minimis* claims below $10.  The Plan of Allocation distributes the Net Settlement Fund to claimants on a *pro rata* basis relative to the size of their recognized claim, and excludes claims less than $10.  ECF No. 75-4, ¶55.  Such small checks are frequently discarded by recipients, serving only to add to the Settlement's costs.  ECF No. 75-8, ¶¶ 8-9.  For this reason, courts approve a range of similar minimum thresholds.

26.    The fairness of the Settlement is also not disturbed by excluding claimants who received their shares as a gift, inheritance, or a conveyance by operation of law, who would not otherwise be able to sustain a suit under Section 10(b). Courts regularly approve similarly worded settlement agreements that exclude

DECLARATION OF AUSTIN P. VAN; 3:21-cv-00687-AJB-MSB

gifts, inheritance, or operation of law.  Therefore, the Plan of Allocation's fairly limits only claimants who do not have a valid claim.

## V.      THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

27.    The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations.  The Parties reached the Settlement after Class Counsel had thoroughly investigated the claims and consulted with a damages expert.  The investigation consisted of an independent review of public documents and statements regarding and from Franklin, retention of an investigator who interviewed former Franklin employees and third parties, and serving discovery requests and responding to the same from Defendants.

28.    Class Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, and at trial.  Accordingly, Plaintiff faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation, which would also entail significant additional expenses and delay.  Class Counsel carefully considered each of these risks before agreeing to the Settlement.

29.    Although Class Counsel believes Plaintiff's claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiff would defeat Defendants' anticipated motion for summary judgment or prevail at trial—or any subsequent appeals.  Defendants would likely challenge whether Plaintiff had adequately alleged the elements of falsity, scienter, and loss causation.

30.    Plaintiff faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading.  Plaintiff also faced the risk that the Court would find he had not adequately pleaded a strong inference of scienter with sufficient particularity, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The Court could also have found that Plaintiff's motive

and opportunity allegations were insufficient to show scienter. Plaintiff also faced the risk that the Court would find the alleged theory of loss causation was unavailing.

31. Plaintiff also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiff calculated that damages were $18.6 million assuming he prevailed on all his claims. Based on Class Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

32. Discovery would also be costly and time-consuming. Plaintiff would likely need to engage in further formal fact discovery, requiring review of thousands of documents and taking numerous depositions of Defendants, Franklin employees, and third parties. Further, since the Class Period began in 2020 and depositions would not start until at least well into 2024, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

33. Even if Plaintiff succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiff would still have to enforce the judgment and defeat any applicable appeals.

34. In sum, in light of these significant risks, Plaintiff believes that the proposed Settlement is a very favorable outcome for the Class.

## VI.   THE FEE APPLICATION IS FAIR AND REASONABLE

35. The Notice informed Class Members of Class Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.33% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $300,000. Mahan Decl. (ECF No. 80-1), Ex. A, ¶5, 65. As set forth in the Fee Brief, 33.33% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here.

36.    Class Counsel achieved a highly favorable result for the Class at risk and expense to themselves.  Throughout this litigation, Class Counsel was committed to the interests of the Class and invested the time and resources necessary to resolve the Class's claims.  As a result of this Settlement, Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

***Class Counsel Work and Experience***

37.    Class Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

38.    The total amount of time expended by attorneys and professional staff employed by Class Counsel is 1,489.31 hours.  A listing of the professionals at counsel's law firm who worked on this matter, the number of hours spent by each such professional, their hourly rates, and their work on this matter is set forth in detail for Pomerantz LLP below.  Detailed time records are also attached as **Exhibit C** herewith.

39.    The total value of the services performed in this case by Class Counsel, based upon counsel's current rates as attested to by counsel herein, is $921,634.50.

40.    Class Counsel reviewed Franklin's public filings and statements during the alleged Class Period, as well as other news reports and public information relating to Franklin.  Class Counsel also retained an investigator to interview former Franklin employees and third parties.  Through its investigation, Class Counsel determined the scope and strength of the claims Plaintiff could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions.  Ultimately, Class Counsel ably synthesized these facts into a compelling presentation during settlement negotiations at and after the mediation.

41.    Additionally, Class Counsel reviewed Defendants' mediation statement and researched the applicable law with regards to Plaintiff's claims.  As a result of these efforts, Plaintiff and Class Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

**POMERANTZ LLP**

42.    The chart below contains a summary of time expended by the attorneys and professional staff of Pomerantz on the Action, and the lodestar calculation based on their current hourly rates.   The chart was prepared from daily time records regularly prepared and maintained by my Firm.   Time spent in preparing my Firm's application for fees and reimbursement of expenses and any other time related to periodic time reporting has not been included in this chart.

| Professional (position)* | Rate | Hours | Lodestar |
|---|---|---|---|
| Jeremy Lieberman (P) | $1,325 | 7.00 | $9,275.00 |
| Laura Perrone (SA) | $690 | 51.10 | $35,259.00 |
| Megan Scott (PA) | $500 | 79.00 | $39,500.00 |
| Alex Hood (P) | $975 | 0.60 | $585.00 |
| Austin Van (P) | $1,000 | 376.60 | $376,600.00 |
| James LoPiano (A) | $550 | 3.93 | $2,161.50 |
| Garth Lewis (PA) | $465 | 543.50 | $252,727.50 |
| Terrence Scudieri (A) | $520 | 174.80 | $90,896.00 |
| Elina Rakhlin (A) | $500 | 6.20 | $3,100.00 |
| Lauren Molinaro (A) | $450 | 191.90 | $86,355.00 |
| Guy Yedwab (A) | $475 | 36.38 | $17,280.50 |
| Stephanie Weaver (A) | $450 | 14.30 | $6,435.00 |
| Jack Lo (PL) | $365 | 4.00 | $1,460.00 |
| **Total** | | **1,489.31** | **$921,634.50** |

*Partner (P); Staff Attorney (SA); Associate (A); Project Associate (PA); Paralegal (PL)

43.    My Firm's lodestar figures are based upon the Firm's hourly rates, which rates do not include charges for expense items.   Expense items are billed separately and such charges are not duplicated in my Firm's hourly rates.

44.    In support of this request, please also find detailed time records for my Firm attached as **Exhibit C**.

45.    The chart below is a summary of the unreimbursed expenses incurred by my Firm in connection with the prosecution of the Action.   The expenses set forth below are reflected in the Firm's books and records.   These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my Firm and are an accurate record of the expenses incurred in the prosecution of the Action.

| Expenses | Amount |
|---|---|
| Clerk Filing Fees | $639.00 |
| Online Computer Legal Research and Document Retrieval Fees | $3,285.64 |
| Discovery Vendor Fees | $40,556.60 |
| Deposition and Court Reporting Fees | $1,080.50 |
| Expert Fees | $84,274.75 |
| Investigator Fees | $15,460.21 |
| Mediator Fees | $15,287.04 |
| Overtime-Clerical | $277.85 |
| Photocopying Expenses | $89.90 |
| Postage and Overnight Mail | $519.48 |
| Press Releases and Newswires Fees | $1,951.80 |
| Process Server Fees | $2,230.00 |
| Translation Services Fees | $450.00 |
| Travel and Meal Expenses | $281.10 |
| **Total Expenses** | **$166,383.87** |

46.    If Class Counsel's request of 33.33% of the Settlement as attorneys' fees is granted, Class Counsel would receive a fee of $799,920.00.  This fee award would represent a lodestar multiplier of approximately 0.68.  This multiplier is well below the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

47.    As reflected in the firm's resume, Class Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.  Class Counsel's Firm Resume was previously filed with its Lead Plaintiff motion.  ECF No. 6-7.

48.    Moreover, in addition to the time expended to date, Class Counsel will expend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

49.    Defendants' Counsel, Seltzer Caplan McMahon Vitek and SML Avvocatti P.C. (together, "Defense Counsel"), vigorously represented their clients. Defense Counsel are highly respected defense firms with substantial securities

litigation experience and resources.  In the face of this opposition, Plaintiff and Class Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

50.    Class Counsel undertook this class action on a contingency fee basis.  I summarize above and Plaintiff further describes in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.  Those same risks are relevant to an award of attorneys' fees.

51.    From the outset, Class Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required.  Class Counsel has received no compensation during the course of their involvement in this litigation.

52.    The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

53.     As a result of persistent efforts in the face of substantial risks and uncertainties, Class Counsel achieved a fair, adequate, and reasonable recovery for the Class.  In consideration of Class Counsels' efforts and the favorable result achieved, I believe that a 33.33% fee is reasonable and that the Court should approve it.

***The Reaction of the Class to the Requested Fee***

54.    As noted above, 2,704 Notice Packets were disseminated to potential Class Members, who received notice of the Settlement.  Suppl. Mahan Decl., ¶4.

55. The deadline for objections was August 1, 2024. To date, neither Class Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. *Id.*, ¶9. Plaintiff intends to address any timely objections in his reply papers in support of final approval.

56. The deadline to request exclusion from the Settlement is September 18, 2024. As discussed above, Epiq has not received any valid requests for exclusion. *Id.*, ¶8.

## VII. REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

57. As detailed herein, Class Counsel has incurred $166,383.87 in litigation expenses in connection with the prosecution of the Action.

58. From the outset, Class Counsel was aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Class Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Class Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

59. A listing of the expenses counsel incurred, compiled from the firm's regularly maintained records, are set forth in the chart above, and in detailed time records attached as **Exhibit C**.

60. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

## VIII. AN AWARD TO PLAINTIFF PURSUANT TO THE PSLRA IS WARRANTED

61. Plaintiff seeks an award of $7,500 for his time and effort overseeing this action pursuant to the PSLRA. The work Plaintiff completed on behalf of the Class

includes, *inter alia*, filing a lead plaintiff motion, reviewing pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. Plaintiff has been actively involved and put the concerns of the Class at the forefront.

62. As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of September 2024, at New York, New York.

By:      */s/ Austin P. Van*
                    Austin P. Van

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Austin P. Van
Austin P. Van

DECLARATION OF AUSTIN P. VAN; 3:21-cv-00687-AJB-MSB