**POMERANTZ LLP**
Jennifer Pafiti (CA Bar No. 282790)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jpafiti@pomlaw.com
avan@pomlaw.com

*Counsel for Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs<br><br>v.<br><br>FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN,<br><br>Defendants. | Case No.: 3:21-cv-00687-AJB-MSB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND**<br><br>Hearing Date: August 21, 2025<br>Time: 2:00 PM<br>Judge: Honorable Anthony J. Battaglia<br>Courtroom 4A (4th Floor – Schwartz) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Class Representative Gergely Csaba ("Plaintiff"), through his counsel, respectfully submits this memorandum in support of his motion for entry of the Proposed Order Granting Authorization to Distribute the Net Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action").[1]  The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") is set forth in the accompanying Declaration of Joseph Mahan in Support of Lead Plaintiff's Unopposed Motion for Class Distribution Order (the "Mahan Decl." or "Mahan Declaration"), which is being submitted on behalf of the Court-approved Claims Administrator, by Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator").

If entered by the Court, the Distribution Order will, among other things, (1) approve Epiq's recommendations accepting and rejecting Claims submitted in the Action; (2) direct the distribution of the Net Settlement Fund to Claimants whose Claims have been accepted as valid and approved by the Court; and (3) approve Epiq's fees and expenses incurred and estimated to be incurred in connection with the distribution.

## I.      INTRODUCTION

On December 19, 2024, the Court entered the Order Approving Plan of Allocation of Net Settlement Fund and the Judgement Approving Class Action Settlement.  ECF No. 99 ("Final Approval Order").  The deadline for Settlement Class members to make a Claim from the Net Settlement Fund was August 22, 2024.  *See* Text Order Granting Joint Motion to Schedule Settlement Administrative Deadlines (ECF No. 79) (the "Administrative Deadlines Order").  The Claims Administrator reports that all eligible claims have been received, reviewed, and are ready to be paid.

---

[1]  Unless otherwise defined herein, capitalized terms take the same meaning provided in the Amended Stipulation and Agreement of Settlement filed on February 26, 2024 ("Amended Stipulation") (Dkt. No. 75-2).

MEMORANDUM IN SUPPORT OF MOTION FOR DISTRIBUTION; 3:21-cv-00687-AJB-MSB

The Claims Administrator received 933 Claim Forms (referred to as "Claims"), 282 of which meet the approved criteria for payment. *See* Mahan Decl. ¶¶ 6, 34, attached hereto as Exhibit 1. Included in this category are nine claims which are accepted in part. Lead Counsel have reviewed the Claims Administrator's findings and agree that the properly documented Claims should be paid.

The Claims Administrator wholly rejected 651 Claims that failed to meet the requirements of the Stipulation, because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation. *See* Mahan Decl. ¶ 31. Included in this category are: (i) claims that did not result in a recognized loss; (ii) claims with no eligible purchases during the settlement class period; (iii) deficient claims with condition of ineligibility never cured; (iv) claims withdrawn / voided by request; (v) duplicate claims; and (vi) late claims received after August 22, 2024. Mahan Decl. ¶ 32. These Claims were denied after review in accordance with the procedure approved by the Court. None of the rejected Claimants dispute the rejection of their respective Claims. *Id*.

Now that the claims process is complete, Lead Counsel seek to begin the distribution process. To facilitate the claims administration, Lead Counsel request that each Authorized Claimant's check state that it must be cashed within ninety (90) days after the issue date or else is void. This deadline will encourage the prompt cashing of checks by Authorized Claimants and will also allow Lead Counsel to determine if a second distribution is feasible in a timely manner.

Lead Counsel have also reviewed the Claim Administrator's invoices and found them to be reasonable as they were within the expected range for a claims administrator's work administering a settlement.

MEMORANDUM IN SUPPORT OF MOTION FOR DISTRIBUTION; 3:21-cv-00687-AJB-MSB

Accordingly, consistent with the Stipulation and the Final Approval Order, the Net Settlement Fund should be distributed to the Settlement Class as proposed in the class distribution order filed with this motion.

## II. THE CLAIMS SUBMITTED FOR PAYMENT

All notices informed the Settlement Class that August 22, 2024 was the due date for filing Claims. As a result of the notice program (including mailings, toll-free helplines, press releases, and Settlement website portal) the Claims Administrator received 933 Claims in connection with the Settlement. *See* Mahan Decl. ¶ 6. Two (2) Claims were received after the August 22, 2024 deadline. *Id.* ¶ 30. As these Claims were received approximately six months after the Claim filing deadline, after consulting with Lead Counsel, it was determined that these Claims would delay the Settlement administration, and the Claims Administrator determined these claims should be denied. *Id.*

The Claims Administrator reviewed the 933 claims in accordance with the requirements for payment pursuant to the Plan of Allocation. The Claims Administrator determined that 282 of the Claims were properly documented, had recognized losses, and otherwise met the requirements of the Notice (the "Authorized Claims"). *Id.* ¶ 34. The Authorized Claims include nine claims which are accepted in part, and 273 claims that are acceptable in whole. The Authorized Claims represent $3,044,195.99 of recognized losses pursuant to the Plan of Allocation. *Id.*

## III. THE COURT SHOULD APPROVE PAYMENT OF THE AUTHORIZED CLAIMS

The Claims Administrator carefully reviewed, analyzed, and processed the Claims. Authorized Claims required documentation and a recognized loss as calculated under the Plan of Allocation. The Mahan Declaration discusses the Claims Administrator's review of the Claims and provides additional detail for the

Court's consideration. Lead Counsel agree that the Authorized Claims should be paid from the Net Settlement as soon as possible.

The Claims Administrator will follow the procedure for payment of Authorized Claims as previously ordered in the Court's Order Granting Plaintiff's Renewed Motion for Preliminarily Approval of Class Action Settlement ("Preliminary Approval Order") (ECF No. 77) and the Final Approval Order. In addition, Lead Counsel joins the Claims Administrator in its recommendation that all checks for Authorized Claim bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE" in order to encourage prompt cashing of checks. *See* Mahan Decl. ¶ 38(a)(iv). Implementing this process will save administrative costs and is necessary in order for the Claims Administrator to "make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks" and to calculate the amount of cash available for a possible redistribution within a reasonable time after the initial distribution. Notice ¶ 61.

Accordingly, Lead Counsel request that the Court permit the distribution of the Net Settlement Fund to the Authorized Claimants listed in Exhibits C-1 of the Mahan Declaration, with a requirement that checks be cashed within 90 days after the issue date.

## IV. ALL REJECTED CLAIMS WERE PROPERLY DENIED

The Claims Administrator has finalized its determination of which claims are authorized and which are ineligible. *See* Mahan Declaration at ¶ 4. Epiq identified approximately 39 deficient or ineligible paper and online claims, and 625 deficient or ineligible electronic claims ("Electronic Claims"). *Id.* at ¶¶ 20, 23. When paper or online claims were inadequately documented, Epiq sent claimants Deficiency Notices advising them of the nature of their inadequacy and providing them an opportunity to cure. Mahan Declaration at ¶ 21; Exhibit B. When electronic claims were deficient or ineligible, Epiq sent claimants Deficiency Emails identifying the

individual transactions and claims that were found to be deficient or ineligible. *Id.* at ¶ 23.

After reviewing all 933 Claims received for this action, the Claims Administrator rejected 651 Claims for the following reasons:

| No. of Claims | Reason for Rejection |
| --- | --- |
| 125 | Claim Did Not Result in a Recognized Loss |
| 501 | No Eligible Purchase During the Settlement Class Period |
| 13 | Deficient Claim with Condition of Ineligibility Never Cured |
| 3 | Claim Withdrawn/Voided by Request |
| 7 | Duplicate Claim |
| 2 | Late (received after August 22, 2024) |

*See* Mahan Decl. ¶ 32, Ex. C-2.

As part of the administration process, the Claims Administrator attempted to contact each Claimant with deficient or ineligible Claims to provide them with opportunities to cure the deficiencies identified in their Claims. *See* Mahan Decl. ¶¶ 21-25. Claimants with deficient claims were advised that they had the right to contest the Claims Administrator's determination of deficiencies or ineligibility and that they could request that their dispute be submitted to the Court for review. *See Id.*, Ex. B. While Epiq received two requests for Court review, Epiq was able to resolve the two requests received, and as of the date of this filing, none of the Claimants with deficient or ineligible Claims have requested that their dispute be submitted to the Court for review.

## V.   FEES AND EXPENSES OF THE CLAIMS ADMINISTATOR

Lead Counsel have also reviewed the Claims Administrator's invoices and found them to be reasonable as they were within the expected range for a claims administrator's work administering a settlement. *See* Mahan Declaration at ¶¶ 36-37, Exhibit D. The Claims Administrator's total fees and expenses for this matter through May 19, 2025, are $52,679.78, of which all has been paid. Mahan Decl. ¶ 37. The Claims Administrator estimates that the cost of conducting the initial distribution of the Settlement, which will be reserved prior to the Initial Distribution, is $27,320.22. *Id.* Therefore, Epiq respectfully requests the Court

approve fees in the amount of $80,000. *Id.* Should the estimate of fees and expenses to conduct the initial distribution exceed the actual fees and expenses, Epiq will refund the difference to the Net Settlement Fund once the initial distribution is completed. *Id.* Accordingly, Lead Counsel requests that the Court approve payment of such to the Claims Administrator.

## VI.    DISTRIBUTION OF THE NET SETTLEMENT FUND

The Claims Administrator carefully reviewed, analyzed, and processed the Claims. Authorized Claims required documentation and a recognized loss as calculated under the Plan of Allocation. The Mahan Declaration discusses the Claims Administrator's review of the Claims and provides additional detail for the Court's consideration. Lead Counsel agree that the Authorized Claims should be paid from the Net Settlement as soon as possible.

Upon the issuance of the Court's order authorizing distribution, Epiq will distribute the entire available balance of the Net Settlement Fund to Authorized Claimants, after deducting the payments previously allowed and requested herein, and after the payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees (the "Initial Distribution"). *Id.* at ¶ 38(a). Epiq will calculate awards amounts to each Authorized Claimant by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation. *Id* at ¶ 38(a)(i). No distribution will be made on a claim where the potential distribution amount is less than $10.00 in cash. *Id* at ¶ 38(a)(ii). After eliminating claimants who would have received less than $10.00, Epiq will calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00. *Id* at ¶ 38(a)(iii). To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Plaintiff proposes that all the distribution checks bear the notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id* at ¶ 38(a)(iv).

MEMORANDUM IN SUPPORT OF MOTION FOR DISTRIBUTION; 3:21-cv-00687-AJB-MSB

If there is any balance remaining in the Net Settlement Fund after six (6) months from the initial distribution date (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel recommends that, if economically feasible, such remainder be allocated in a second distribution (the "Second Distribution"), after payment of any unpaid taxes, fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who cashed their checks from the initial distribution, and who would receive at least $10.00 from such re-distribution. *Id* at ¶ 38(b). In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise, Epiq will conduct a further distribution of the Net Settlement Fund not less than six (6) months after the Second Distribution, if cost effective. *Id* at ¶ 38(c). All funds remaining in the Net Settlement Fund, after payment of any unpaid taxes, fees and expenses incurred in administering the Settlement, including for such re-distribution, will be distributed to Authorized Claimants who cashed their Second Distribution checks in an equitable and economic fashion. *Id.* Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. *Id.* At that point, the residual balance will be contributed—subject to Court approval—to Public Justice, a nonsectarian, not-for-profit 501(c)(3) organization. *Id.*

In order to facilitate the efficient distribution of the Net Settlement Fund, it is respectfully requested that the Court bar any further Proofs of Claim against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the

Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, it is respectfully requested that the class distribution order provide that no claim received on or after May 19, 2025 may be accepted for any reason whatsoever, and that no further adjustments to claims may be made for any reason after May 19, 2025. *See* Mahan Decl. ¶ 38(d).

Additionally, to prevent further charges to the Settlement Class, Lead Counsel requests that the Court order that: in no less than one year after the Initial Distribution, or the Second Distribution if it occurs, the Claims Administrator may destroy the paper copies of the Claim Forms and all supporting documentation, and one year after all funds have been distributed, may destroy electronic copies of the same. Mahan Decl. ¶ 38(e). This is the customary document retention period Epiq uses to prevent additional costs to the Class for storage expenses and related fees.

## VII.  CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court enter the proposed class distribution order: (a) approving the Claims Administrator's determinations concerning the acceptance and rejection of the Claims submitted; (b) directing payment of the Net Settlement Fund to Authorized Claimants with a 90-day period for cashing checks; and (c) permitting the Claims Administrator to destroy Claim Forms and supporting documentation one year after the distribution.

Dated: May 28, 2025

Respectfully Submitted,

**POMERANTZ  LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman (*pro hac vice*)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Counsel for Class*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
Facsimile: (212) 697-7296
lesley@portnoylaw.com

*Additional Class Counsel*

MEMORANDUM IN SUPPORT OF MOTION FOR DISTRIBUTION; 3:21-cv-00687-AJB-MSB

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Austin P. Van
Austin P. Van

MEMORANDUM IN SUPPORT OF MOTION FOR DISTRIBUTION; 3:21-cv-00687-AJB-MSB